**AMERICAN CONTRACTING ENTERPRISES, INC.,**
Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (HURLEY),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 27, 2001.

Decided Dec. 12, 2001.

Susan V. Mason, Pittsburgh, for petitioner.

Michael A. Karaffa, Pittsburgh, for respondent.

Before COLINS, J., LEADBETTER, J., MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

American Contracting Enterprises, Inc. (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed a decision of a workers' compensation judge (WCJ) granting the claim petition of Daniel A. Hurley (Claimant). We affirm.

Claimant, a construction worker employed by Employer, filed a claim petition alleging that he injured his shoulder at work on June 18, 1996 and again the next day resulting in a total disability commencing June 20, 1996. Employer opposed the petition, and a hearing was held before the WCJ. Claimant testified on his own behalf and introduced the deposition testimony of three treating physicians: Edward D. Snell, M.D., Charles J. Burke, III, M.D., and Charles E. Kollmer, M.D. Employer presented the deposition testimony of Victoria M. Langa, M.D., who performed an independent medical examination on Claimant. Based upon this testimony, the WCJ made the following relevant findings of fact.

Claimant, who had a history of right shoulder problems, testified that on June 18, 1996, while in the course of his employment, he was standing on a stepladder removing asbestos duct tape. He began to fall from the ladder and reached around the tape to catch his balance at which point he felt something pull in his right shoulder. He believed that he had a tear in the

shoulder and informed a coworker. He finished his shift and reported to work the next day. On June 19, 1996, while moving a wheelbarrow full of concrete blocks, Claimant experienced a pull in his right shoulder, accompanied by a popping sensation, when the wheelbarrow tipped. Claimant informed one of Employer's owners of the injury. Claimant reported to work the following day, but was unable to continue working because of the pain in his shoulder. Claimant testified that his supervisor suggested that he go to the hospital. On June 20, 1996, Claimant went to the emergency room of Allegheny General Hospital. Following treatment there, he was referred to Dr. Snell for follow-up care. Employer did not present any fact evidence challenging Claimant's version of how the injuries occurred on June 18 and 19, 1996.

Dr. Snell, a sports medicine physician with a specialty in non-surgical orthopedics, testified that he served or serves several sports organizations, including the Pittsburgh Penguins and those related to Duquesne University and a number of high schools. He first examined Claimant on July 1, 1996. On that date, Dr. Snell found that Claimant had a limited range of motion in his right shoulder and had trouble getting his arm above the shoulder. Claimant also demonstrated positive shoulder impingement signs, mild muscle weakness, anterior laxity, and mild inferior laxity. Dr. Snell opined that the findings from his examination of Claimant were consistent with Claimant's explanation of how the shoulder injury arose.

Dr. Snell also reviewed the Allegheny Hospital emergency room records and the records of Dr. Kollmer, who had previous to the work injury treated Claimant for right shoulder problems, which treatment included shoulder surgery. Dr. Snell initially diagnosed Claimant as having suffered a strain of his previous surgical repair or a tear of his right rotator cuff. He prescribed physical therapy for the injury. Dr. Snell examined Claimant again on November 11, 1996, and reviewed the results of an MRI performed on Claimant's shoulder. Dr. Snell opined that the MRI showed that Claimant's right shoulder showed a significant amount of impingement. He referred Claimant to Dr. Burke for possible surgical intervention.

Dr. Snell testified, within a reasonable degree of medical certainty, that Claimant was unable to perform his regular work duties as a result of the work injury, at least from June 18, 1996 until the date he last saw Claimant, November 11, 1996. He further opined that Claimant's shoulder injury and resulting disability was the result of the accident occurring on June 18, 1996. The WCJ rejected as unpersuasive Employer's attempt on cross-examination to demonstrate that Dr. Snell was not accurately informed of Claimant's history with his right shoulder. WCJ's Finding of Fact No. 11(x).

Dr. Burke, an orthopedic surgeon, testified that he is chief physician for the Pittsburgh Penguins and has been the team physician for a number of other sports entities. He first examined Claimant on November 20, 1996. Dr. Burke testified that although an MRI showed a possible rotator cuff tear, he suspected that Claimant had developed shoulder instability and ordered an arthrogram. The arthrogram revealed an irregularity of the shoulder capsule, and Dr. Burke diagnosed Claimant as suffering from an instability of the right shoulder. He recommended surgery on the shoulder, which surgery was performed on December 5, 1996. Following surgery, Claimant's arm was placed in a sling and he was prescribed range of motion exercises.

Dr. Burke opined, within a reasonable degree of medical certainty, that Claimant's shoulder injury was a consistent result of the events of June 1996 as related to him by Claimant and that the injury and resulting surgery were causally related to the work accident. Knowledge that Claimant had a long history of problems with his right shoulder, including previous surgery, did not change Dr. Burke's opinion as to causation. Dr. Burke further directed Claimant not to work from the date of his first treatment with him until at least the date of his last visit on February 12, 1997.

Dr. Kollmer, a Florida orthopedic surgeon, testified that he first treated Claimant for his shoulder in January 1995 up until early 1996 when Claimant returned to Pennsylvania. Dr. Kollmer treated Claimant again from March 1997 until July 1997. Dr. Kollmer initially performed arthroscopic surgery on Claimant's right shoulder in February 1995. Some years before, Claimant had fractured his right clavicle, which injury ultimately required the 1995 surgery. Dr. Kollmer testified that Claimant had recovered from the arthroscopic surgery, and he released Claimant for work on July 10, 1995, nearly one year prior to the work accident. On January 2, 1996, however, Dr. Kollmer diagnosed a right rotator cuff strain and performed an arthroscopic debridement of the shoulder on February 14, 1996. Dr. Kollmer discharged Claimant two days later and released him to work with Employer.

Dr. Kollmer next saw Claimant on March 4, 1997 when Claimant returned to Florida. Claimant complained about problems in his right shoulder, and Dr. Kollmer ordered a CT/arthrogram of the shoulder, which procedure was performed on March 14, 1997. Dr. Kollmer also referred Claimant to Dr. Zwolinski for treatment and evaluation. Dr. Zwolinski performed an EMG evaluation, which showed irrita-tion and other nerve injuries to the shoulder. Dr. Kollmer opined that Claimant suffered from chronic rotator cuff impingement syndrome on the right side with some instability change. He ordered that Claimant undergo physical therapy to loosen an adhesive capsulitis (frozen shoulder) that had developed. Dr. Kollmer observed that on Claimant's last visit with him, on July 1, 1997, Claimant continued to have a decreased range of motion of his shoulder with increased pain. Dr. Kollmer opined that nothing could be done orthopedically for Claimant and that he required chronic pain management.

Dr. Kollmer had reviewed the records and reports of Drs. Burke, Snell, and Zwolinski as well as the Allegheny Hospital emergency room records. Based on these records and reports and his examination of Claimant and diagnostic studies performed, Dr. Kollmer opined that Claimant's present shoulder difficulties were causally related to the June 1996 work accident. Dr. Kollmer further opined that Claimant was disabled and could not return to work.

Employer's medical witness, Dr. Langa, examined Claimant on August 5, 1997. On that date she observed that he had motion restrictions in his shoulder and could not fully get his arm over his head or work with his arm over his head. She diagnosed Claimant as suffering from musculature atrophy of the shoulder girdle. She attributed the loss of range of motion to surgery performed after the June 1996 injury. She did not, however, disagree with any of the treatment rendered to Claimant following the June 1996 injury. She testified that Claimant now has work restrictions.

The WCJ found the testimony of Claimant and Drs. Snell, Burke, and Kollmer to be credible and persuasive. The WCJ found the testimony of Dr. Langa to be

less persuasive than that of Claimant's medical experts. Accordingly, the WCJ found that Claimant had sustained a work-related injury on June 18, 1996, that was aggravated on June 19, 1996, and which resulted in rendering Claimant totally disabled from his "heavy level job" as an asbestos removal laborer. The WCJ further found that Claimant's fracture of his right clavicle, occurring in approximately 1986, was not relevant because he had healed from that injury to the degree that he could work for Employer shortly after that injury until 1989, at which time he went to work for another company. The WCJ further found that the rotator cuff tears to his shoulder that were surgically repaired by Dr. Kollmer in 1995 and February 1996 were also not relevant because (a) Dr. Kollmer released Claimant to work after both procedures, (b) Claimant did not have a rotator cuff tear when Dr. Burke performed surgery following the work accident, and (c) Claimant's right shoulder problem in June 1996 was determined to be a new injury. The WCJ further generally found that Claimant's previous shoulder problems were not relevant because Drs. Snell, Burke, and Kollmer testified that Claimant's current problems were all related to the June 1996 work accident, establishing that Claimant sustained a new injury at that time. The WCJ therefore granted the claim petition and awarded total disability benefits. The Board affirmed, and this petition for review followed.

This Court's scope of review is limited to determining whether the WCJ's necessary findings of fact are supported by substantial evidence or whether an error of law or a constitutional violation occurred. *ABF Freight Systems, Inc. v. Workers' Compensation Appeal Board (Iten)*, 744 A.2d 348 (Pa.Cmwlth.2000). The WCJ is the sole arbiter of fact, evi-dentiary weight, and credibility and may accept or reject the testimony of any witness in whole or in part. *Id.* So long as the findings of the WCJ are supported by substantial evidence, they must be accepted as conclusive. *Columbo v. Workmen's Compensation Appeal Board (Hofmann)*, 162 Pa.Cmwlth. 307, 638 A.2d 477 (1994).

Employer argues that (1) the record is devoid of substantial evidence linking Claimant's disability with his work environment because the medical testimony linking same is incompetent as it was allegedly based on an inaccurate and incomplete history of Claimant's prior medical problems, and (2) the record is devoid of evidence demonstrating a continuing disability. In making its first argument, Employer acknowledges that the fact that a medical expert did not have all of the claimant's medical records in formulating his or her opinion only goes to the weight of the expert's testimony, not its competency. *See Saville v. Workers' Compensation Appeal Board (Pathmark Stores, Inc.)*, 756 A.2d 1214 (Pa.Cmwlth.2000), *petition for allowance of appeal denied*, 565 Pa. 658, 771 A.2d 1292 (2001). Employer argues, however, that because each of Claimant's three expert witnesses was allegedly basing his respective opinion on "significantly inaccurate" histories of Claimant's prior medical condition, their testimony is rendered incompetent. Employer, however, grossly overstates the evidence, ignores relevant case law regarding the proper evaluation of medical testimony, and fails to take into account the full breadth of the WCJ's findings of fact, that are correctly based upon the record as a whole.

With regard to Dr. Snell's testimony, Employer cobbles together unrelated or sparsely related comments on cross-examination to portray that the doctor's testimony was founded on complete inaccuracies.

Employer points out that Dr. Snell was unaware of the 1989 surgery to repair Claimant's fractured clavicle and the arthroscopic debridement occurring in February 1996 (although Dr. Snell was aware of the 1995 arthroscopic surgery of Dr. Kollmer). Dr. Snell also testified on cross-examination that it was possible that Claimant could experience pain in his shoulder, based on his medical history, without the intervention of trauma. Dr. Snell further responded on cross-examination that he did not know whether the pain Claimant experienced in June 1996 was a recurrence of Claimant's pre-existing right shoulder problems.

■ These selections from the testimony of Dr. Snell in no measure render, as a matter of law, his testimony incompetent. A medical expert's opinion is not rendered incompetent unless it is *solely* based on inaccurate or false information. *Newcomer v. Workmen's Compensation Appeal Board (Ward Trucking Corp.)*, 547 Pa. 639, 692 A.2d 1062 (1997). Moreover, it is well established that the opinion of a medical expert must be viewed *as a whole*, and that inaccurate information will not defeat that opinion unless it is dependent on those inaccuracies. *Deitrich v. Workmen's Compensation Appeal Board (Shamokin Cycle Shop)*, 136 Pa.Cmwlth. 557, 584 A.2d 372 (1990).

■ Dr. Snell's opinion was not by any means based on inaccurate information. At worst, Dr. Snell did not have benefit of the knowledge of two surgical procedures that the WCJ determined to be irrelevant to the issue of causation.[1] Dr. Snell's

medical opinion was based, rather, on (1) his own examination and treatment of Claimant, (2) MRI results, (3) medical records from the emergency room, and (4) Claimant's history of the work injuries occurring in June 1996. None of the records upon which Dr. Snell relied were proven to be inaccurate, and Claimant's history of the work injury was not proven to be inaccurate. Therefore, Dr. Snell's testimony was clearly not incompetent. Dr. Snell's cross-examination testimony that Claimant, based on his history, could have experienced shoulder pain without trauma is, of course, irrelevant since Claimant *did* prove that he experienced work-related trauma in June 1996. Further, Dr. Snell's testimony that he did not know whether or not Claimant's pain was linked to a recurrence of his prior shoulder injuries, standing alone, does not damage, let alone invalidate, his testimony. A work-related aggravation of a prior non-work-related condition is, of course, compensable. *Workmen's Compensation Appeal Board v. Bernard S. Pincus Co.*, 479 Pa. 286, 388 A.2d 659 (1978).

■ Employer's attempt to show that Dr. Burke's testimony was incompetent as a matter of law is similarly flawed. Employer argues that the doctor's testimony is unreliable because, while he was aware that Claimant had shoulder surgery approximately ten years before their meeting or sooner, he was not specifically aware that Claimant had closed reduction surgery for a fractured clavicle in 1989, that Claimant had surgery involving arthro-

---

1. It must be emphasized that Employer has not specifically challenged the WCJ's findings of fact that the prior surgeries were irrelevant to the issue of causation. Therefore, these findings are conclusive on this petition for review. *Pawlosky v. Workmen's Compensation Appeal Board*, 514 Pa. 450, 525 A.2d 1204 (1987). Employer also ignores the un-

controverted fact found by the WCJ that Claimant suffered physical injury to his shoulder at work on June 18 and 19, 1996. Employer does not set forth any argument why the June 1996 work injury is not a factor in Claimant's disability even if Claimant had residual problems from his prior shoulder injuries.

scopic subacromial decompression and anterior stabilization and debridement of the distal clavicle in February 1995, and that this latter surgery was repeated in February 1996. Employer also points out that Dr. Burke relied upon Claimant's history concerning his recent shoulder problems in coming to his diagnosis.

Again, the WCJ specifically found that the three prior surgeries of which Dr. Burke was unaware are irrelevant to the issue of causation. Further, Dr. Burke based his testimony on his observations, a history of the work injury as supplied by Claimant, and the results of an arthrogram. The history of the work injury, as related by Claimant, being not directly challenged by Employer, was found by the WCJ to be fact. Therefore, Dr. Burke's testimony was not based upon relevant incorrect information. Moreover, Dr. Burke, when confronted with the history of Claimant's prior surgeries, never recanted his testimony, relying upon Claimant's representation, found to be fact by the WCJ, that Claimant was asymptomatic prior to the June 1996 work injury. Dr. Burke's Deposition, pp. 26–27.

■ Employer's argument that Dr. Kollmer's testimony was incompetent as a matter of law is based solely on Dr. Kollmer's testimony that he "recollected" at the time of his deposition that Claimant's work injury arose from something falling on Claimant's shoulder at work at some point in June 1996. While this recollection is, of course, at odds with the WCJ's finding of fact that Claimant injured his shoulder in June 1996 as Claimant described the injury, Employer provides no authority to support the conclusion that the doctor's poor recollection on this matter goes to the competency of the testimony instead of the weight to be placed upon it by the WCJ. Dr. Kollmer was certainly directly familiar with Claimant's shoulder issues, having

performed the 1995 and February 1996 surgeries and thereafter having treated Claimant's shoulder following the December 1996 surgery. Moreover, Dr. Kollmer testified that he reviewed the records and reports of Drs. Burke, Snell, and Zwolinski as well as the Allegheny Hospital emergency room records. The WCJ therefore could evaluate Dr. Kollmer's testimony as a whole to conclude that Dr. Kollmer's poor recollection at the time of the deposition as to the precise manner by which Claimant was injured was simply not determinative. Again, nothing in the record supports the conclusion that Dr. Kollmer's testimony was based in any respect on inaccurate or false information.

Employer next argues that the medical evidence does not support the WCJ's conclusion that the work injury rendered Claimant disabled beyond July 1, 1997, which was the last date that Claimant was seen by Dr. Kollmer. Employer bases this argument on its argument that when posed with the question as to whether they could provide an opinion within a reasonable degree of medical certainty concerning Claimant's disability after the date of Claimant's last medical appointment, none of Claimant's three medical witnesses could respond that they could accurately provide information on a patient that they had not seen since the date of last appointment.

■ A claimant has the burden of proving a continuing disability throughout the pendency of the claim petition. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993); *Innovative Spaces v. Workmen's Compensation Appeal Board (DeAngelis)*, 166 Pa.Cmwlth. 141, 646 A.2d 51 (1994), *petition for allowance of appeal denied*, 541 Pa. 645, 663 A.2d 696 (1995). No authority, however, requires a claimant's medical witness to be an eyewitness

to the disability status of the claimant throughout the pendency of the claim petition.

■ The WCJ's conclusion that Claimant satisfied his burden of proving an ongoing disability is supported by several facts. First, despite Employer's attempts to portray his testimony to the contrary, Dr. Kollmer opined that Claimant is disabled as a result of the work accident. Dr. Kollmer observed that on Claimant's last visit with him, on July 1, 1997, Claimant continued to have a decreased range of motion of his shoulder with increased pain, that nothing could be done orthopedically for Claimant, and that Claimant required chronic pain management. WCJ's Findings of Fact Nos. 15(o) and (p). He also testified that Claimant's rotator cuff impingement syndrome with possible instability of the shoulder is permanent. Dr. Kollmer's Deposition, p. 40. The WCJ could therefore evaluate Dr. Kollmer's testimony as a whole to conclude that it supports a finding of an ongoing disability even though the doctor could not comment on Claimant's status following their last appointment. A reasonable person could simply conclude that the doctor could not comment with any certainty on the health status of an individual that he has not seen since a certain date.

Second, Dr. Burke did not waiver in his opinion concerning Claimant's disability. He merely stated that, following his last visit with Claimant, he could not provide any "specific information," but that he could give basic guidelines for follow-up care. Dr. Burke's testimony, p. 33. Third, Employer's own physician testified that Claimant had work restrictions. WCJ's Finding of Fact No. 16(g). Finally, Claimant himself testified that he is disabled as a result of the shoulder injury. Notes of Testimony, October 24, 1996, p. 33.

In *Ricks v. Workers' Compensation Appeal Board (Parkway Corp.),* 704 A.2d 716 (Pa.Cmwlth.1997), we determined that the WCJ is free to determine the chronological length of a claimant's disability, based not only upon the testimony of the claimant's medical witness but also upon the testimony of the claimant as well, even if the claimant's medical witness had released the claimant to full duty. The testimony of Claimant concerning continuing disability is therefore substantial evidence supporting the WCJ's finding of ongoing disability. *Id.* Employer's argument is thus wholly without merit.

For the foregoing reasons, the Board's order is affirmed.

### ORDER

AND NOW, this 12th day of December, 2001, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.