IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amazon.com,                                    :
                         Petitioner            :
                                               :      No.  1828 C.D. 2014
            v.                                 :
                                               :      Submitted:  May 22, 2015
Workers' Compensation Appeal                   :
Board (Davidson),                              :
                         Respondent            :


BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                    FILED:  August 5, 2015


            Amazon.com (Employer) petitions for review of the September 10, 2014 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) denying Employer's termination petition and granting the review and reinstatement petitions filed by Leon Davidson (Claimant).  We affirm.

            By way of a March 30, 2011 Notice of Temporary Compensation Payable (NTCP), Employer acknowledged that Claimant sustained a work-related lumbar spine sprain on February 23, 2011.  The NTCP converted to a Notice of Compensation Payable (NCP) by operation of law.[1]   Claimant's benefits were

---

[1] See Notice of Conversion of Temporary Compensation Payable to Compensation Payable. (Reproduced Record (R.R.) at 7a.)

suspended effective August 30, 2011, based on his return to work with no loss of earnings. On November 16, 2011, Claimant filed reinstatement and penalty petitions, which were resolved by an approved stipulation providing that Claimant's benefits were reinstated for a closed period and suspended as of his return to work on January 10, 2012.

On February 20, 2012, Claimant filed a reinstatement petition alleging a worsening of his condition and a recurrence of disability. Also on that date, Claimant filed a review petition seeking to include aggravation of degenerative disc disease of the lumbar spine, lumbar facet syndrome, and L5-S1 arthropathy to the description of his work injury. Subsequently, Employer filed a termination petition alleging that Claimant had fully recovered effective March 15, 2012. The petitions were consolidated and assigned to a WCJ.

Claimant testified before the WCJ on December 20, 2011. He noted that his regular job as a packer required him to grab boxes weighing up to fifty pounds from a conveyor line and place them onto different pallets, depending on weight and product type. Claimant stated that on February 23, 2011, he began experiencing back pain that worsened as the day continued. Claimant completed his shift and went to work the following morning. Claimant said that he was still in pain and reported the incident to Employer, who sent him to the nurse and then instructed him to go home. (R.R. at 34a-37a.)

Claimant testified that he was examined by Employer's panel physician, Debra Gorski, M.D. (Dr. Gorski), on February 28, 2011. Dr. Gorski diagnosed a low back sprain, scheduled an MRI, and referred Claimant to physical therapy for the next several months. In late May 2011, Dr. Gorski referred Claimant to Terence Duffy,

2

M.D. (Dr. Duffy), a pain management consultant. Dr. Duffy treated Claimant with a series of epidural steroid injections and a lesioning procedure. (R.R. at 37a-40a.)

Claimant stated that, with permission of Dr. Gorski and Dr. Duffy, he returned to modified light-duty work on August 29, 2011, with restrictions that included no pushing and pulling more than fifteen pounds and no lifting more than ten to fifteen pounds. Claimant testified that he continued in his modified light-duty position until November 14, 2011, when Employer informed him that he must return to full-duty work because his condition had resolved. Claimant testified that he had not returned to work since November 14, 2011, and that, as of the date of the December 20, 2011 hearing, he had not been released to return to work by either Dr. Duffy or Dr. Gorski. (R.R. at 40a-42a.)

Claimant acknowledged that he had previously received treatment for back pain approximately fifteen to twenty years ago while he was working in the construction industry. Claimant stated that he fully recovered from this prior lower back injury and that he did not sustain or receive treatment for any type of back injury from the beginning of his term of employment with Employer in 2008 until the work injury on February 23, 2011. (R.R. at 38a-39a; WCJ's Finding of Fact No. 12.)

At the April 3, 2012 hearing, Claimant testified that chiropractic treatment had relieved some of his symptoms, and Dr. Duffy had permitted him to attempt to return to work in late December 2011. Claimant stated that he returned to full-duty work on January 10, 2012, and was placed in the middle of the work line. He described the position as similar to his pre-injury job, involving bending, twisting, and lifting merchandise weighing up to forty pounds. (R.R. at 67a-69a.)

Claimant stated that when he returned to work his symptoms recurred, but he was able to continue working for two weeks before he began to experience

3

more severe pain. On January 24, 2012, Claimant advised his supervisor that he was experiencing pain in his back and down both legs. After Claimant's supervisor took him to the nurse's station, Claimant was sent home, and he returned to Dr. Duffy for treatment shortly thereafter. Claimant testified that he did not believe he was capable of returning to his pre-injury position. (R.R. at 69a-70a.)

Claimant testified before the WCJ again on November 19, 2012. He stated that he had not worked since the April 2012 hearing and still had pain in his back that radiated down both legs. Claimant said that he did not recall being treated by Dr. Duffy for his previous back injury in 2006 or 2007. However, Claimant stipulated that his earlier testimony concerning the date of his prior back injury was mistaken and that the injury did not occur fifteen or twenty years ago but instead in 2006 or 2007. (R.R. at 179a, 183a-87a.)

In support of his petitions, Claimant also offered the deposition testimony of Dr. Duffy, who is board certified in internal medicine, physical medicine and rehabilitation, and pain medicine. Dr. Duffy testified that he first evaluated Claimant for the specific work injury on May 31, 2011, after referral by Dr. Gorski. Dr. Duffy stated that he reviewed Claimant's medical records, including a March 9, 2011 MRI, which showed degenerative changes at L3-L4 through L5-S1 and mild disc bulging at L5-S1. Dr. Duffy's final diagnosis for Claimant's February 23, 2011 work injury was lower back pain, lumbar facet syndrome, lumbar radiculitis, lumbar disc degeneration, and lumbar spondylosis. Dr. Duffy testified that Claimant's underlying arthropathy, or degeneration of the facet joints, was caused by age-related wear and tear and was aggravated by Claimant's work activities. (R.R. at 97a-103a.)

4

Dr. Duffy's physical examination of Claimant revealed tenderness in the lower lumbar area, no sacroiliac pain, unremarkable straight leg raise, and a nonfocal neurological exam. He performed bilateral lumbar facet blocks on Claimant in June and July 2011. Dr. Duffy noted that Claimant responded well to the injections and that the treatments provided good short-term relief. Dr. Duffy evaluated Claimant in late July and recommended radiofrequency lesioning, which he performed on August 12, 2011. (R.R. at 104a-09a.)

Dr. Duffy testified that he next treated Claimant on September 7, 2011. Claimant had returned to work a month earlier, but was only able to work for two days before the increased non-radiating lower back pain returned. Dr. Duffy testified that he treated Claimant on October 19, 2011, at which time Claimant was taken out of work due to increased lumbar pain and placed in physical therapy. Dr. Duffy noted that Claimant had returned to modified duty and was reporting an increase in non-radiating lower lumbar pain with increased work duties. (R.R. at 110a-12a.)

Dr. Duffy testified that he saw Claimant on November 28, 2011, at which point Claimant's physical therapy had been discontinued and Claimant was released from his light duty job at Amazon due to a lack of available modified-duty work. Dr. Duffy reported that during Claimant's next visit on December 28, 2011, he experienced lumbar pain with extension but he exhibited some improvement after undergoing chiropractic treatment. Dr. Duffy stated that he released Claimant on a trial basis to full-duty, unrestricted work to see how Claimant would tolerate it. (R.R. at 112a-16a.)

Dr. Duffy testified that he next saw Claimant on February 2, 2012; Claimant had worked for Employer for ten days but was unable to continue due to increasing low back pain and lower extremity radiating pain. Dr. Duffy stated that

Claimant underwent an MRI on February 13, 2012, which showed evidence of facet degenerative changes at L3-4, L4-5 and L5-S1 and increased degeneration at L3-5 and L5-S1, which was causing narrowing of the thecal sac and the foramen, respectively. Dr. Duffy examined Claimant again on February 21, 2012, and performed interlaminer epidural steroid injections on March 2, and March 28, 2012. (R.R. at 116a-21a.)

Dr. Duffy opined with a reasonable degree of medical certainty that Claimant's back pain was due to a preexisting underlying arthritic process that was significantly aggravated by Claimant's work activities, rendering Claimant disabled from January 25, 2012, through the present. (R.R. at 123a-25a.)

During cross-examination, Dr. Duffy stated that Claimant's injury was a progressive injury, related to Claimant's repetitive work activities. Dr. Duffy testified that Claimant was more susceptible to low back pain as a result of previous back problems and a degree of arthritic changes. Dr. Duffy noted that Claimant is obese and acknowledged that extra weight can cause stress on the lower back. (R.R. at 129a-30a.)

Dr. Duffy did not recall whether he reviewed an MRI from May 2006, and he testified as follows:

> Q.    If the MRI from 2006 reflected disc dessication at L5-S1 with bulges at L3-4, L4-5, and L5-S1, would that affect your opinion in any way?
>
> A.    In regards to his work injury?
>
> Q.    In regards to the progression of his condition.
>
> A.    I would really want to take a look at how much facet joint arthritis he was getting, how much enlargement of the facet joints occurred between 2006 and 2011, what levels they were at, those types of things.

6

Q. So is it safe to say you would want to see those films to compare them?

A. If I'm being asked if there's been that much of a progression of the degeneration, yes.

Q. Are you aware that he had problems with his back going back even 15 to 20 years earlier?

A. Again, I don't have the older records. I'm not really sure. He very well may have. My question would be, what was the nature of the back problems at that time.

(R.R. at 141a-42a.) Dr. Duffy said that he currently would describe Claimant at best as functioning at the sedentary level. (R.R. at 144a.)

Dr. Duffy recalled that he previously treated Claimant for low back pain while he was with another practice, sometime between March 2006 and December 2009. He no longer had access to those medical records and did not remember the exact dates, but he agreed that the time period was approximately 2006. Dr. Duffy testified that Claimant's low back pain had been successfully treated with facet injections, and he remembered that Claimant "had a very good response." (R.R. at 140a-41a.) "We did extremely well and to my knowledge, [he] did not have any reoccurrence of his back pain until the work activities of February of 2011." (R.R. at 125a-26a.)

In support of its termination petition, Employer presented the July 19, 2012 deposition testimony of Allister Williams, M.D. (Dr. Williams), who is board certified in orthopedic surgery and conducted independent medical examinations (IMEs) of Claimant on August 30, 2011, and March 15, 2012.

The first IME took place one day after Claimant began modified light duty work for Employer. Dr. Williams testified that Claimant's symptoms and medical history included buttock pain, right leg pain, and proximal thigh pain. He

7

stated that Claimant did not provide him with any history of back treatment prior to his work injury. Dr. Williams testified that when he conducted the physical examination, he noted no tenderness or palpation or percussion in the lumbar spine, and a full range of motion, adding that Claimant's sensation was intact, and Claimant executed a straight leg raise without significant pain. (R.R. at 156a-57a.)

At that time, Dr. Williams diagnosed Claimant with a lumbar sprain-strain injury that had resolved. Dr. Williams said that such injuries normally resolve within six to twelve weeks, and it had been well over six weeks from Claimant's injury. He stated that Claimant had returned to work, and, in light of his findings on physical examination, "it seemed like the strain had resolved." (R.R. at 157a.) Dr. Williams also testified that Claimant had spondylosis, which is a degenerative arthritic change associated with the facet joints and synonymous with facet arthropathy. Dr. Williams recommended that Claimant continue to perform only light-duty work for another month before returning to full-duty work. Dr. Williams testified that, even though he felt Claimant's lumbar strain/sprain had resolved, he did not release Claimant to full duty work on August 30, 2011, because Claimant had a strenuous job and he wanted Claimant to have a "ramp-up period." (*Id*.)

Dr. Williams conducted the second IME on March 15, 2012, two months after Claimant last worked for Employer. At that visit, Claimant informed Dr. Williams that he had a previous back injury twenty years ago that had resolved prior to his work injury. Dr. Williams said that he reviewed an August 31, 2007 MRI, which showed only lumbar spondylosis. Dr. Williams stated that he reviewed an MRI of Claimant's lumbar spine performed on February 13, 2012, which showed some S1 joint inflammation and disc bulges. Dr. Williams opined that Claimant's symptoms as of March 12, 2012, were consistent with pre-existing lumbar

spondylosis, not a work-related injury. Dr. Williams found that Claimant had full rotation of the lumbar spine, Claimant's strength was a five out of five, and Claimant's straight leg raise test was negative and showed no radiculopathy. Dr. Williams testified that he completed an Affidavit of Recovery on March 15, 2012. (R.R. at 157a-59a.)

On cross examination, Dr. Williams acknowledged that he did not have any medical records from 2007 to 2011 indicating that Claimant was treated for any ongoing symptoms related to his back. Dr. Williams testified that he had reviewed the occupational health records of Dr. Gorski and noted her March 21, 2011, diagnosis of sacral sprain, degenerative disease and facet arthropathy, L5-S1. Dr. Williams disagreed with Dr. Gorski's diagnosis that Claimant's work injury was more than a lumbar sprain-strain, which had resolved. (R.R. at 161a-66a.)

The WCJ accepted Claimant's testimony as generally credible and persuasive. The WCJ specifically credited Claimant's description of the work injury on February 23, 2011, and his ongoing disability thereafter, including his inability to continue working on and after January 25, 2012. The WCJ noted that Claimant was not a good historian regarding dates and time periods and explained that his determination was based upon his personal observation of Claimant's demeanor at multiple hearings. The WCJ noted an absence of medical records indicating that Claimant had received any medical treatment for his low back from 2007 to 2011, and Dr. Duffy's credible corroborating medical testimony. (WCJ's Finding of Fact No. 47.)

The WCJ accepted Dr. Duffy's medical opinions as competent, credible, and persuasive for purposes of establishing that Claimant's February 23, 2011 work injury includes an aggravation of his pre-existing degenerative disc disease, lumbar

9

facet syndrome, and arthropathy or degeneration of the lumbar facet joints, finding that those conditions were significantly aggravated by Claimant's work activities in February 2011 as well as Claimant's return to work in January 2012. The WCJ stated that Dr. Duffy's opinions were consistent with the opinions of Claimant's treating and evaluating physicians, supported by diagnostic studies, findings on physical examination, and Claimant's credible testimony. The WCJ further accepted Dr. Duffy's opinion that Claimant was disabled from performing his pre-injury duties on and after January 25, 2012. (WCJ's Finding of Fact No. 48.)

The WCJ rejected Dr. Williams' testimony and opinions to the extent they were inconsistent with the testimony and opinions of Dr. Duffy. The WCJ noted that Dr. Williams saw Claimant on only two occasions, whereas Dr. Duffy treated Claimant on numerous occasions for an extended period of time. (WCJ's Finding of Fact No. 49.)

Based on these credibility determinations, the WCJ granted Claimant's review petition and amended Claimant's description of injury to include an aggravation of pre-existing degenerative disk disease of the lumbar spine, lumbar facet syndrome, and arthropathy or degeneration of the lumbar facet joints. Further, the WCJ found that these conditions resulted in Claimant's temporary total disability as of January 25, 2012, granted Claimant's reinstatement petition, and denied Employer's termination petition.

Employer appealed to the Board, asserting that Dr. Duffy's testimony was incompetent and equivocal, Claimant's testimony lacked credibility, the WCJ should have credited Dr. Williams' superior testimony, and the WCJ failed to issue a reasoned decision. The Board affirmed the WCJ's decision and specifically rejected

Employer's contentions. Subsequently, Employer filed an application for supersedeas with this Court, which was denied on January 6, 2015.

On appeal,[2] Employer argues that Dr. Duffy's testimony was not competent to establish that Claimant suffered additional injuries beyond those recognized in the NCP and that the WCJ failed to issue a reasoned decision as required under section 422(a) of the Workers' Compensation Act (Act).[3]

Initially, we note that it is a fundamental principle of workers' compensation law that the WCJ is the final arbiter of witness credibility and evidentiary weight. *Hoang v. Workers' Compensation Appeal Board (Howmet Aluminum Casting, Inc.)*, 51 A.3d 905, 909 n.7 (Pa. Cmwlth. 2012). The WCJ may accept or reject, in whole or in part, the testimony of any witness. *Id*. A WCJ's credibility and evidentiary determinations are binding on appeal unless made arbitrarily and capriciously, *Casne v. Workers' Compensation Appeal Board (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008), and this Court is precluded from disturbing the WCJ's findings of fact if they are supported by substantial competent evidence. *Callahan v. Workmen's Compensation Appeal Board (Bethlehem Steel Corp.)*, 571 A.2d 1108, 1110 (Pa. Cmwlth. 1990).

Employer asserts that Dr. Duffy's testimony was not competent to establish an aggravation of a pre-existing condition because Dr. Duffy did not recall treating Claimant after his 2006 injury and did not review the medical records associated with that previous injury. In making this argument, Employer disregards

---

[2] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704.

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §834.

11

Dr. Duffy's testimony that Claimant had a very good response to treatment for his prior injury. More important, with respect to expressions of medical opinion, it is well settled that an expert's opinion is rendered incompetent only if it is based solely on inaccurate or false information. *DeGraw v. Workers' Compensation Appeal Board (Redner's Warehouse Markets, Inc.)*, 926 A.2d 997, 1001 (Pa. Cmwlth. 2007); *American Contracting Enterprises, Inc. v. Workers' Compensation Appeal Board (Hurley)*, 789 A.2d 391, 396 (Pa. Cmwlth. 2001). Thus, we have repeatedly held that the fact that a medical expert does not have all of a claimant's medical records goes to the weight given the expert's testimony, not its competency. *DeGraw*, 926 A.2d at 1001; *Huddy v. Workers' Compensation Appeal Board (U.S. Air)*, 905 A.2d 589, 593 (Pa. Cmwlth. 2006); *Marriott Corporation v. Workers' Compensation Appeal Board (Knechtel)*, 837 A.2d 623, 631 n.10 (Pa. Cmwlth. 2003).

Although Employer contends that Dr. Duffy's testimony mirrors the expert testimony rejected by the court in *Chik-Fil-A v. Workers' Compensation Appeal Board (Mollick)*, 792 A.2d 678 (Pa. Cmwlth. 2002), the comparison is inapt. In *Chik-Fil-A*, the claimant sought compensation for a 1997 back injury. The claimant acknowledged that she injured her back in 1995 but denied any other prior injuries. On cross-examination, the claimant conceded that she had been treating with chiropractors for neck and back problems since 1987. The claimant's medical witness based his opinion entirely on the incomplete history provided by the claimant. Further, the doctor testified that if the claimant's medical history was not complete and accurate, his opinion would be incorrect. This Court determined that the testimony of the claimant's doctor was incompetent as to causation. In sharp contrast to the facts in *Chik-Fil-A*, Claimant's medical expert was not unaware of any injuries or symptoms prior to the work injury at issue, and he did not base his

12

opinions on an inaccurate medical history given by Claimant. Accordingly, we reject Employer's assertion that Dr. Duffy's testimony was not competent to support the WCJ's findings.

Employer also argues that the WCJ failed to issue a reasoned decision as required by section 422(a) of the Act. More specifically, Employer asserts that the WCJ failed to discuss the parties' respective burdens of proof and failed to adequately explain why he rejected Employer's evidence. Section 422(a) of the Act states that

> [a]ll parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. . . . The adjudication shall provide the basis for meaningful appellate review.

77 P.S. §834.

"[A] decision is 'reasoned' for purposes of Section 422(a) if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards. A reasoned decision is no more, and no less." *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003).

Contrary to Employer's assertions, the WCJ's decision fully satisfies the statutory reasoned decision requirements. The WCJ clearly and concisely identified the evidence upon which he relied and stated his reasons for rejecting conflicting

13

competent evidence. The WCJ explained that he accepted Dr. Duffy's testimony "as competent, credible, logical, internally consistent, and persuasive," noting that it was supported by Dr. Duffy's findings on physical examination, his review of Claimant's medical records, and Claimant's credible testimony. (WCJ's Finding of Fact No. 47.) The WCJ specifically noted that Claimant was not a good historian regarding dates and time periods and explained that he credited Claimant's testimony based upon his personal observation of Claimant's demeanor at multiple hearings. In sum, the WCJ's explanation reflects that he considered the evidence of record and that his determination was not made arbitrarily or capriciously.

In *PEC Contracting Engineers v. Workers' Compensation Appeal Board (Hutchison)*, 717 A.2d 1086 (Pa. Cmwlth. 1998), we explained:

> The requirement that the WCJ adequately explain his reasons for accepting or rejecting evidence protects the parties to a decision by ensuring that a legally erroneous basis for a finding will not lie undiscovered. For instance, if a WCJ rejects evidence based on an erroneous conclusion that testimony is equivocal, or that the evidence is hearsay or for some other reason incompetent, such legal error will be evident and can be corrected on appeal.

> However, the WCJ's prerogative to determine the credibility of witnesses and the weight to be accorded evidence has not been diminished by the amendments to Section 422(a). Such determinations are binding on appeal unless made arbitrarily and capriciously. *Ryan v. Workers' Compensation Appeal Bd. (Community Health Servs.)*, [707 A.2d 1130 (Pa. 1998)].

*PEC,* 717 A.2d at 1088-90.

Here, the WCJ's findings are supported by the record and reflect no legal error. As the WCJ's credibility determinations were not made arbitrarily and capriciously and as his findings are supported by substantial evidence, the WCJ's

decision cannot be disturbed on appeal. *PEC*; *Ryan*. In addition, after providing an adequate explanation of his reasons for accepting and rejecting evidence, the WCJ properly applied the relevant law to the facts of the case, as articulated in his Conclusions of Law Nos. 2-6. Finally we note that the WCJ's Conclusions of Law correctly set forth the parties' burdens of proof, and we are perplexed by Employer's contrary interpretation.

Accordingly, we affirm.


                    _____
                    PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amazon.com, : 
        Petitioner : 
         :   No. 1828 C.D. 2014
        v. : 
         : 
Workers' Compensation Appeal : 
Board (Davidson), : 
        Respondent : 

## _**ORDER**_

AND NOW, this 5th day of August, 2015, the September 10, 2014 order of the Workers' Compensation Appeal Board is affirmed.

                                   _____

                                   PATRICIA A. McCULLOUGH, Judge