IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Liquor Control   :
Board,   :
           Petitioner   :
  :
     v.   :    No. 147 C.D. 2023
  :    Submitted: February 6, 2024
Amato Berardi (Workers'   :
Compensation Appeal Board),   :
           Respondent   :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE MARY HANNAH LEAVITT, Senior Judge

**<u>OPINION NOT REPORTED</u>**

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT                 FILED: April 10, 2024

        The Pennsylvania Liquor Control Board (Employer) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that granted the claim petition filed by Amato Berardi (Claimant). In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Claimant's injuries occurred in the course and scope of his employment and, thus, were compensable under the Workers' Compensation Act (Act).[1] On appeal, Employer argues that the Board erred because Claimant fell in a public parking lot during a lunch break, and Claimant's medical evidence did not establish causation. Discerning no merit to these contentions, we affirm the Board.

## Background

        Claimant worked as a clerk in a state liquor store in Warminster, Pennsylvania. His duties included stocking shelves, unloading trucks, and cashing

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.1, 2501-2710.

out customers. On June 29, 2019, while on his lunch break, Claimant fell while walking back to the store with his take-out meal.

On August 1, 2019, Claimant filed a claim petition under the Act alleging that he sustained injuries to his "[r]ight [k]nee" while "walking from his vehicle in[]to the store." Reproduced Record at 5a (R.R. __). Employer denied all allegations, asserting that the "incident happened in a parking lot which was not owned, operated or controlled by [Employer]." R.R. 8a. Hearings were held before the WCJ.

Claimant testified that he began working for Employer on October 4, 2018. He explained that he has arthritis in his right knee, for which he has received yearly cortisone shots since 2014 to treat the pain. He further explained that he used the parking lot that serves the shopping center where the liquor store is located. The only entrance to the store is through the front doors adjacent to the parking lot. On the day in question, Claimant drove to a pizza shop to pick up lunch. He returned to work and, while walking to the front door of the liquor store, tripped on a concrete barrier and fell, hitting his right knee and elbow. Claimant did not immediately seek medical attention, figuring he "would just see how it goes." Claimant Dep. at 13; R.R. 24a. However, he left early to ice his knee at home because of the swelling.

Claimant testified that, on or about July 5, 2019, he informed Employer that he needed medical attention for his right knee. Employer sent him to the Rothman Institute, where he was seen by Christopher Aland, M.D., on July 11, 2019, who placed him on modified duty while waiting for the results of a magnetic resonance imaging (MRI) test. Claimant continued working until July 20, 2019, when he left work because of knee pain. Because Employer issued a Notice of

2

Compensation Denial, Claimant was not able to return to the Rothman Institute or get the MRI.

On or about August 7, 2019, Claimant was seen by Ronald Lieberman, M.D., who ordered an MRI, took Claimant out of work, and referred Claimant to Scott Katzman, M.D. Dr. Katzman diagnosed Claimant with a torn medial meniscus that required surgery, which took place on October 10, 2019. On October 25, 2019, Dr. Katzman released Claimant to return to work, part-time, to modified duties. Claimant is not permitted to do extensive standing, bending, or climbing, and cannot lift more than 10 pounds. However, effective August 25, 2020, Employer eliminated the modified-duty position. Claimant remains under work restrictions from Dr. Katzman, whom he last saw in February 2020.

On cross-examination, Claimant acknowledged that he was not directed by Employer to park his vehicle in any particular place. It was his choice. He also acknowledged that he fell while still on his lunch break.

Dr. Katzman is an orthopedic surgeon and Claimant's treating physician. He testified that on September 20, 2019, Claimant presented with "right knee pain, swelling, catching and clicking," as a result of his fall. Katzman Dep. at 12; R.R. 118a. Dr. Katzman understood that Claimant had previously treated for his arthritis. Based on the MRI, Dr. Katzman diagnosed a "meniscal tear" and "moderate degenerative changes to his patella and tibial joint space medially with a small effusion," for which he did surgery on October 10, 2019. Katzman Dep. at 13; R.R. 119a. In December 2019, Claimant returned, at which visit Dr. Katzman diagnosed Claimant with chondral damage, which had been observed in the surgery. Dr. Katzman testified that Claimant has not fully recovered from his work injury and cannot return to work full-time.

3

On cross-examination, Dr. Katzman acknowledged that Claimant had received injections for right knee problems and observed that the injections appeared to have been effective. Dr. Katzman also acknowledged that the MRI report suggested degeneration that preexisted the June 29, 2019, fall. However, the MRI also showed edema, which supported "an acute finding consistent with acute trauma." Katzman Dep. at 30; R.R. 136a. Dr. Katzman further noted that the degeneration described in the radiology report did not mention osteophytes, which are expected when degeneration develops over time.

Eugene Elia, M.D., who is board certified in orthopedic surgery, testified on behalf of Employer. On December 18, 2019, he did an independent medical examination of Claimant and reviewed his medical records, which confirmed a torn meniscus. They also showed arthritis and psoriasis. Claimant stated that he was able to do the modified position as a cashier. Dr. Elia observed that Claimant did not limp, and he was able to ascend and descend the examination table without difficulty. With respect to Claimant's right knee, Dr. Elia observed some "synovitis which is mild swelling with no effusion, which is commonly known as water on the knee." Elia Dep. at 17; R.R. 189a. There was evidence of psoriasis on both of his knees and mild tenderness along the medial joint line. Dr. Elia testified that Claimant's exam was almost normal.

Dr. Elia opined that Claimant suffered a right knee contusion, sprain, and torn meniscus as a result of the fall on June 29, 2019. Dr. Elia testified that Claimant's improvement after surgery "shows me that the arthritis that he had experienced was not aggravated or accelerated by [the work injury] and any complaints that he continued to have would be his baseline complaints." Elia Dep. at 27; R.R. 199a. Dr. Elia opined that, as of December 18, 2019, Claimant had fully

4

recovered from the June 29, 2019, work injury and was able to resume his previous position without restrictions.

## WCJ Decision and Board Adjudication

The WCJ found the testimony of Claimant credible. The WCJ found the testimony of Drs. Katzman and Elia credible to the extent their opinions were consistent, but where they differed, the WCJ found Dr. Katzman more credible and persuasive than Dr. Elia. Because Dr. Katzman was Claimant's treating provider and did the knee surgery, he had the opportunity to observe the inside of Claimant's knee. Dr. Katzman examined Claimant both before and after surgery, whereas Dr. Elia only examined Claimant after surgery.

The WCJ found that Claimant sustained a meniscal tear and chondromalacia of the condyle of the right knee that was either caused or aggravated by the fall. The WCJ found that Claimant's injury occurred in the course and scope of his employment. Although he was on his lunch break, Claimant was walking in an area integral to Employer's store when he fell and injured himself. Thus, Claimant proved that his injury occurred in the course of his employment.

Employer appealed to the Board, arguing generally that the WCJ erred in granting Claimant's claim petition. The Board remanded the matter to the WCJ for a decision on Claimant's contingency fee agreement.[2] On the merits of the WCJ's decision, the Board affirmed.

## Appeal

---

[2] The remanded portion involved the approval of the contingency fee agreement. The Board remanded this matter for the WCJ to make specific findings regarding the terms and intent of the contingency fee agreement to be approved. The WCJ awarded attorney's fees to Claimant's counsel of 20% of the total amount of the repriced medical bills paid. *See* Employer Brief at 21 n.3. On January 18, 2023, the Board affirmed the WCJ's decision. It is this final order which Claimant appealed.

On appeal,[3] Employer raises one issue.  It argues that the Board erred in affirming the WCJ's decision granting Claimant's claim petition.[4]

**Analysis**

To be eligible for compensation, an injured employee must establish that his injury occurred in the course of employment. Section 301(c)(1) of the Act states, in pertinent part, as follows:

> The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, except as provided under subsection (f), arising in the course of his employment and related thereto . . . . The term "*injury arising in the course of his employment*," as used in this article . . . shall include all [ ] injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and *shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.*

77 P.S. §411(1) (emphasis added).

---

[3] The Court's standard of review is to determine whether necessary findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. *Piedmont Airlines, Inc. v. Workers' Compensation Appeal Board (Watson)*, 194 A.3d 737, 740 n.1 (Pa. Cmwlth. 2018).

[4] Employer's statement of the questions presented does not conform to Pennsylvania Rule of Appellate Procedure 2116(a), PA. R.A.P. 2116(a).  It reduces all its issues to one: Did the Board err?  In its brief, however, Employer essentially raises three issues.  First, Claimant was not in the course of his employment when he was injured on June 29, 2019.  Second, Claimant did not establish a causal connection between his fall and his disability.  Third, Claimant's disability ended on December 27, 2019, following a normal physical examination.  Accordingly, we will address these issues seriately.

6

Section 301(c)(1) has been construed to mean that an injury arises in the course of employment in two distinct situations. First, an injury is compensable if it occurs while the claimant is furthering the business or affairs of his employer, without regard to where the injury occurs. Second, the claimant may be entitled to compensation if the injury occurs on the employer's premises. Specifically, compensation may be awarded if the employee

> (a) is on the premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on; (b) is required by the nature of his employment to be present on his employer's premises; and (c) sustains injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon.

*Workmen's Compensation Appeal Board (Slaugenhaupt) v. United States Steel Corporation*, 376 A.2d 271, 273 (Pa. Cmwlth. 1977). Whether an employee is injured in the course of employment is a question of law to be determined on the basis of the WCJ's findings of fact. *Markle v. Workers' Compensation Appeal Board (Bucknell University)*, 785 A.2d 151, 153 (Pa. Cmwlth. 2001).

With these principles in mind, we turn to the merits of Employer's appeal.

## I. Course of Employment

In its first issue, Employer argues that Claimant was not in the course of his employment when he tripped and fell because Employer does not own, maintain, or control the parking lot. Even if the parking lot were considered an "integral part" of Employer's premises, Claimant was walking back to the store to eat his lunch, not to resume his job duties. A claimant who is off duty and sustains an injury on the employer's premises is not acting in furtherance of the employer's

7

business. Employer Brief at 26 (citing *Camiolo v. Workers' Compensation Appeal Board (American Bank Notes)*, 722 A.2d 1173 (Pa. Cmwlth. 1999)).

Employer further argues that Claimant's presence in the parking lot was not required by the nature of his employment. It directs the Court to *Giebel v. Workmen's Compensation Appeal Board (Sears)*, 399 A.2d 152 (Pa. Cmwlth. 1979), where benefits were denied to a claimant injured while shopping in a retail store adjoining her place of employment. We reasoned that the claimant was not in a place where her presence was required when injured. Employer argues that as in *Giebel*, Claimant was not in a place where his presence was required by work but, rather, "enjoying" his lunch break. Employer Brief at 29. Additionally, Employer contends that *ICT Group v. Workers' Compensation Appeal Board (Churchray-Woytunick)*, 995 A.2d 927 (Pa. Cmwlth. 2010), is distinguishable. In that case, the claimant slipped on ice in the parking lot while leaving for lunch. By contrast, here, Claimant was already on his lunch break when he fell, and Employer did not require Claimant to eat his lunch in the storeroom.

In any case, Employer argues that Claimant's injury was not caused by the condition of the premises or by the operation of Employer's business or affairs thereon. *See Slaugenhaupt*, 376 A.2d at 273. Claimant testified that his left foot hit a concrete barrier, but Claimant did not establish that the concrete barrier was in an incorrect place, or installed higher or lower than it should have been.

Claimant responds that Employer's "premises" includes parking lots, public streets, and common areas if they are integral to Employer's workspace or constitute a reasonable means of ingress or egress from the workplace. Claimant Brief at 16 (citing *US Airways, Inc. v. Workers' Compensation Appeal Board*

8

*(Bockelman)*, 221 A.3d 171 (Pa. 2019)). The parking lot was where Claimant and other employees parked and was the only way to enter and exit Employer's store.

We have explained that an employer's premises under Section 301(c)(1) of the Act, 77 P.S. §411(1), is not limited to the property that the employer owns or controls. "'Parking lots, public streets, and common areas in multi-unit office buildings, for instance, may be considered part of the employer's premises if they are integral to the employer's workplace or constitute a reasonable means of ingress to or egress from the workplace.'" *Stewart v. Workers' Compensation Appeal Board (Bravo Group Services, Inc.)*, 258 A.3d 584, 589-90 (Pa. Cmwlth. 2021) (quoting *US Airways*, 221 A.3d at 176).

Here, Claimant's fall occurred in the parking lot that serves the shopping center where Employer is located, and it provides the only entrance to the store. Because the parking lot constituted a reasonable means of ingress to the work site, Claimant's injuries were incurred on Employer's premises.

As to whether the nature of Claimant's employment required him to be on Employer's premises where he was injured, we have explained:

> Once an employee is on the employer's premises, "actually getting to or leaving the employee's workstation is a necessary part of employment, which is definitively furthering the employer's interests." *Allegheny Ludlum Corp.* [*v. Workers' Compensation Appeal Board (Hines)*], 913 A.2d [345,] 349 [(Pa. Cmwlth. 2006)]. Moreover, any injury sustained by an employee up until the time she leaves the employer's premises is compensable, provided it is reasonably proximate to her work hours. *Epler v. N[orth] Am[erican] Rockwell Corp.*, 393 A.2d 1163, 1165 (Pa. 1978).

*Lombardi v. Workers' Compensation Appeal Board (UPMC Health Plan, Inc.)* (Pa. Cmwlth., No. 208 C.D. 2020, filed October 27, 2021) (unreported),[5] slip op. at 6. "Reasonable proximity" covers leaving for lunch. Accordingly, the claimant who fell on ice while leaving for her lunch break was on her employer's premises when injured. *ICT Group*, 995 A.2d 927. We concluded that "her presence on [the e]mployer's premises remained so connected to the employment relationship that it was required by the nature of her employment." *Id*. at 932.

Here, similar to *ICT Group*, Claimant parked in a parking lot that provided a customary means of ingress and egress to Employer's premises. Although Claimant was still on his lunch break, he was returning to Employer's premises, not just to eat lunch but to resume his work duties. His presence in the parking lot "was required by the nature of his employment."[6] *ICT Group*, 995 A.2d at 932.

Finally, Employer argues that Claimant did not establish that the injuries he sustained were caused by the condition of the premises. A claimant is not required to demonstrate that his injuries were the result of a defect in the premises, or negligent operation of the business. *Thomas Jefferson University Hospital v. Workmen's Compensation Appeal Board (Cattalo)*, 601 A.2d 476, 479 (Pa. Cmwlth. 1991). It is enough that Claimant fell in the parking lot while walking to Employer's store; this satisfies the requirement that his injuries were caused by the condition of the premises.

---

[5] An unreported panel decision of this Court, "issued after January 15, 2008," may be cited "for its persuasive value[.]" Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

[6] Employer's reliance on *Giebel*, 399 A.2d 152, is misplaced. Its analysis cannot be reconciled with later developments in this area of the law.

In sum, the WCJ did not err in finding that Claimant was injured in the course of his employment.

## II. Causal Connection

Employer next argues that Claimant did not establish a causal connection between his fall and his disability. It contends that Dr. Katzman's opinion was incompetent because he lacked knowledge of Claimant's prior physical condition and did not review his medical records before 2019. Dr. Katzman's opinion was also equivocal because he opined that Claimant's chondromalacia was *either caused or aggravated by* the fall, which is medically impossible.

Claimant responds that the WCJ credited his testimony and Dr. Katzman's unequivocal, medical testimony that he sustained a work-related injury; has not fully recovered; and cannot return to work. This constitutes substantial, competent evidence to support the WCJ's findings. The critical inquiry is whether there is evidence to support the findings made by the WCJ, not whether the record contains evidence to support facts other than those found by the WCJ.

Although the WCJ has exclusive province over questions of credibility and evidentiary weight, "the question of the competency of evidence is one of law and fully subject to our review." *Namani v. Workers' Compensation Appeal Board (A. Duie Pyle)*, 32 A.3d 850, 854 (Pa. Cmwlth. 2011) (quotation omitted). "Competency, when applied to medical evidence, is merely a question of whether a witness's opinion is sufficiently definite and unequivocal to render it admissible." *Pryor v. Workers' Compensation Appeal Board (Colin Service Systems)*, 923 A.2d 1197, 1203 (Pa. Cmwlth. 2006). "Medical evidence is unequivocal as long as the medical expert, after providing a foundation, testifies that in his professional opinion he believes or thinks the facts exist." *Merrell v. Workers' Compensation Appeal*

11

*Board (Department of Corrections)*, 158 A.3d 242, 250 (Pa. Cmwlth. 2017) (quoting *Cerro Metal Products Company v. Workers' Compensation Appeal Board (PLEWA)*, 855 A.2d 932, 937 (Pa. Cmwlth. 2004)). The "fact that a medical expert does not have all of a claimant's medical records goes to the weight given the expert's testimony, not its competency." *Pryor*, 923 A.2d at 1203 (quoting *Marriott Corporation v. Workers' Compensation Appeal Board (Knechtel)*, 837 A.2d 623, 631 n.10 (Pa. Cmwlth. 2003)).

Here, Employer contends that Dr. Katzman's testimony was not competent because he was not fully aware of Claimant's complete medical history. Additionally, because Dr. Katzman opined that Claimant's work activities either "caused or aggravated" his right knee chondromalacia, his opinion was equivocal.

While Dr. Katzman did not review all of Claimant's records, when "viewed as a whole," his opinion was not "solely based on inaccurate information." *Pryor*, 923 A.2d at 1203. Dr. Katzman was aware that Claimant was experiencing similar problems with his right knee before June 29, 2019, for which he had been treated. Dr. Katzman noted that the injections allowed Claimant to do "a rather heavy job that requires a lot of lifting" before his fall. Katzman Dep. at 24; R.R. 130a.

Dr. Katzman testified that "[t]he fall was a contributing factor to the symptoms that resulted with respect to the chondromalacia[.]" WCJ Decision at 6, Finding of Fact (F.F.) No. 3(n). Further, the MRI "showed edema[,]" "an acute finding consistent with acute trauma[.]" Katzman Dep. at 30; R.R. 136a. On cross-examination, Dr. Katzman did not waiver in his opinion that the work injury caused or aggravated Claimant's chondromalacia. Dr. Katzman's testimony was not equivocal.

12

Additionally, "an expert's opinion will not be deemed incompetent simply because an expert testifies that a claimant's work duties either caused an injury or aggravated a preexisting injury." *Executive Offices v. Workers' Compensation Appeal Board (Rothwell)* (Pa. Cmwlth., No. 546 C.D. 2020, filed April 21, 2021) (unreported), slip op. at 15. Thus, Dr. Katzman's opinion that Claimant's right knee chondromalacia of the femoral and tibial condyle was "in part due to the fall and in part possibly preexisting, but aggravated by the fall" is not equivocal. Katzman Dep. at 19; R.R. 125a. Either way, Claimant sustained a work injury.

### III. Continuing Disability

Finally, Employer argues that the WCJ erred by finding that Claimant continues to be disabled by his work injury beyond December 27, 2019, when Dr. Katzman last treated Claimant. Although he found some tenderness, Dr. Katzman's physical examination of Claimant's right knee on that date was otherwise normal. Employer Brief at 35 (citing R.R. 124a, 142a). Because a normal physical examination does not support ongoing disability, Employer contends that the WCJ erred by finding that Claimant's disability continued after December 27, 2019.[7]

A claimant has the burden of proving a continuing disability throughout the pendency of the claim petition. *American Contracting Enterprises, Inc. v. Workers' Compensation Appeal Board (Hurley)*, 789 A.2d 391, 397 (Pa. Cmwlth. 2001). The WCJ's conclusion that Claimant satisfied his burden of proving an ongoing disability is supported by several facts. First, although Claimant's meniscal tear was repaired, Dr. Katzman testified that Claimant was not fully recovered or able to work full duty for Employer. Katzman Dep. at 22; R.R. 128a. When Dr.

---

[7] Claimant does not specifically respond to Employer's argument that Claimant was no longer disabled as of December 27, 2019.

Katzman saw Claimant on December 27, 2019, he "still had some tenderness to his knee[.]" Katzman Dep. at 18; R.R. 124a. Second, Claimant testified that he still has pain and swelling in his knee and difficulty bending and going up stairs. WCJ Decision at 5, F.F. No. 2(*l*). The WCJ is free to determine the chronological length of a claimant's disability, based not only upon the testimony of the claimant's expert, but also upon the testimony of the claimant as well. *American Contracting Enterprises, Inc.*, 789 A.2d at 398. The credited testimony of Dr. Katzman and Claimant constitutes substantial evidence supporting the WCJ's finding of ongoing disability.

## Conclusion

Claimant's injury, from which he is not fully recovered, occurred in the course and scope of his employment, and Claimant established a causal connection between his fall and his disability. Accordingly, the Board's adjudication is affirmed.

_____
MARY HANNAH LEAVITT, President Judge Emerita

Judge Fizzano Cannon and Judge Dumas did not participate in the decision in this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Liquor Control
Board,
                Petitioner

        v.

Amato Berardi (Workers'
Compensation Appeal Board),
                Respondent

:
:
:
:
:
:    No.  147 C.D. 2023
:
:
:
:
:

## **O R D E R**

AND NOW, this 10th day of April, 2024, the adjudication of the Workers' Compensation Appeal Board, dated January 18, 2023, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita