# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dennis J. Klamut,                              :
               Petitioner          :
                           :
          v.                          :   No. 405 C.D. 2016
                           :   Submitted: August 19, 2016
Workers' Compensation Appeal          :
Board (Fleming Steel Company),          :
              Respondent          :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**            **FILED: December 20, 2016**

       This workers' compensation appeal concerns the causal relationship between a chronic-smoking claimant's exposure to allergens at work and his subsequent diagnosis of a lung ailment. In particular, Dennis J. Klamut (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board). The Board reversed an order of a Workers' Compensation Judge (WCJ) that granted his claim petition. The Board determined the WCJ's findings were not supported by competent medical evidence because Claimant's medical expert's opinions were based on inaccurate information concerning the duration of Claimant's exposure to the alleged cause of his lung condition, and his long smoking history. Claimant asserts the Board erred because his expert confirmed his opinions in a post-deposition report. Upon review, we affirm.

## I. Background

Claimant worked for Fleming Steel Company (Employer) as a field superintendent repairing and building hangar doors. In that capacity, he traveled to other states and worked at many work sites for different durations. Relevant here, while repairing a submarine hangar in Groton, Connecticut in the summer of 2008, Claimant worked in proximity to pigeon excrement that was piled feet high on a beam located 60 feet above him. He was exposed for a month before a co-worker, wearing protective gear, cleaned the area and stored the waste in crates on the dock. By the time Claimant returned to the work site in October 2008, the excrement was removed. However, in November 2008, Claimant suffered a coughing spell and almost blacked out.

Within weeks, Claimant treated with Dr. Ramesh Kaul, who is board certified in pulmonary medicine (Treating Physician), for shortness of breath and reduced lung function. Treating Physician documented that Claimant smoked a pack of cigarettes a day for more than 30 years. However, he recorded that Claimant quit smoking at that time, and was taking Chantix, a medication designed for that purpose. Based on this initial visit in November 2008, Treating Physician attributed Claimant's symptoms to his smoking history.

Although he returned to the Groton work site for three weeks in November 2009, Claimant was not re-exposed to excrement. He worked at other locations until his last day of work, February 2, 2012.

During this time, Claimant continued to experience symptoms and reduced lung function.  In February 2012, he was admitted to a hospital after an episode where he could not breathe while in Charleston, South Carolina.  Claimant was placed on oxygen and received other breathing treatments.  Following his discharge, Claimant quit smoking at that time (not in 2008), and he resumed treatment with Treating Physician.

On May 17, 2012, Treating Physician and Claimant discussed causes for his lung deterioration other than smoking.  It was not until that medical visit that Claimant described his exposure to pigeon excrement.  Based on his exposure, which Treating Physician believed was continuous from 2009 to 2012, Treating Physician diagnosed Claimant with Pigeon Fancier's disease.  Within a few days of learning this diagnosis, Claimant filed a claim petition attributing his pulmonary condition to his exposure to pigeon excrement while working for Employer.

Donald J. McGraw, M.D., who is board certified in occupational medicine (Employer's Expert), performed an independent medical examination (IME) of Claimant on December 11, 2012.   At that time, he recorded Claimant's reported symptomology and exposure to pigeons while on the job.   On examination, Employer's Expert observed Claimant wheezed and had limited air movement, which made it difficult for him to get adequate air.  Employer's Expert was not surprised based on Claimant's smoking history.

3

The WCJ conducted hearings on the claim petition. In support, Claimant testified on his own behalf and submitted the deposition testimony of Treating Physician.

Claimant testified regarding his symptoms, his exposure to pigeons, and his smoking history. Claimant acknowledged he did not work in Groton since 2009, and prior to that, his exposure to pigeons was limited to approximately a month in the summer of 2008. Reproduced Record (R.R.) at 100a-01a. He described his symptoms as shortness of breath and chest pains. Although he experienced shortness of breath and wheezing prior to his exposure to pigeons in 2008, he testified it increased thereafter. His condition worsened in 2012, when Claimant had difficulty breathing and felt squeezing on his chest, leading to his hospitalization in February 2012. Claimant confirmed he began smoking in high school, and smoked a pack a day for almost 40 years, until he quit after his hospitalization in 2012. R.R. at 78a, 93a-94a.

Treating Physician first treated Claimant in November 2008, and resumed treatment when Claimant returned for a second visit in May 2012. Based on Claimant's history, "that he was with pigeons between 2009 and 2012," he opined Claimant has Pigeon Fancier's disease. R.R. at 181a. He explained the disease is a type of pneumonia, caused by Claimant's hypersensitivity to an external antigen, aspergillus, which is in dust, mold, mites, and pigeon excrement.

In addition to Claimant's history, Treating Physician based his diagnosis on his observations and diagnostic tests, including a CT scan of

4

Claimant's lungs and a radio assisted test (RAST) for allergens, showing the high IgE (immunoglobulin of the class E) level for a mold found in pigeon excrement. He testified it was "remarkable" that in 2008 Claimant "did not have much of a diffusion defect. His gas exchange was normal… [but then] his diffusion capacity dropped down from 67 to 46" in 2012. R.R. at 191a.

> Regarding Claimant's smoking history, Treating Physician testified:
>
> A. Between 2008 and '12, when he got – he started seeing the lung doctors, he has started to reform his life. He didn't do his smoking… but he was accelerating down very fast. He should've showed improvement. See, when you stop smoking for a couple of years, you actually improve  ... You don't get inhalation smoke injury. So you should show improvement or, if not, some plateau. You should not go downwards. So if you are going downwards and you have a high IgE level, you know that there's a secondary factor, which is basically doing the job.
>
> Q: Secondary factor other than smoking?
>
> A: Which is like environmental---. Yeah, which is not his smoking.

R.R at 194a-95a (emphasis added). He opined Claimant's condition was not caused by his chronic obstructive lung disease (COPD) because the CT scan showed a nodule on his lung, and COPD does not show nodules. Also, his CT scan showed spots, which improved with steroids. COPD would not improve with steroids. Treating Physician explained the CT scan from August 2012 showed dramatic improvement from that in February 2012 which was otherwise not explained.

On cross-examination, Treating Physician acknowledged Claimant suffers from COPD, which may be attributed to his smoking history. He noted that

5

on the initial visit in November 2008, his impression was COPD, and he opined that smoking was the cause at that time "because that is the history [Claimant] gave me." R.R. at 227a. Treating Physician emphasized his understanding was that Claimant's exposure to pigeon excrement was present between 2009 and 2012. Id. at 227a-28a, 232a-33a. *Without that history, he would not attribute Claimant's condition to Pigeon Fancier's disease.* Id. at 233a. *That is because the diagnostic tests do not show the cause of the condition.* Id. Believing Claimant quit smoking in 2008, he explained Claimant's lung condition should have improved between 2008 and 2012. That his condition worsened indicated another cause.

Treating Physician noted the chest X-rays in October 2008, October and December 2009, and March 2011, showed Claimant's lung fields were clear. Then, on February 28, 2012, the chest X-ray and CT scan showed a change, with mild diffuse interstitial markings. R.R. at 258a. Thus, Claimant's symptoms were the same from 2008 through 2012, only the chest X-ray differed. That suggests it was associated with an acute exposure, repeatedly triggered. Id. at 260a.

Based on the most recent CT scan in August 2012, Treating Physician recorded in a September 12, 2012 follow-up note to Claimant's general practitioner that: "[Claimant] is lucky, he recovered completely." R.R. at 331a; WCJ Op., 9/19/14, Finding of Fact (F.F.) No. 13.

Subsequent to his deposition, Treating Physician submitted a one-page letter dated August 2, 2013, confirming his diagnosis based on the correct dates of exposure: June 22, 2008 through August 1, 2008, and February 2, 2009

6

through February 6, 2009 (Subsequent Report). Assuming these dates of exposure, he confirmed "my opinions regarding diagnosis and causation does [sic] not change." R.R. at 278a. Regarding Claimant's smoking history, he explained the CT chest scans "did not show any signs of new blebs or smoking related changes, also history was sub-acute the reversibility with steroid treatment shows smoking would not have made any significant difference if continued." Id.

In opposition, Employer submitted the deposition testimony of its expert. He opined Claimant has COPD and emphysema, attributed to his 35-plus year smoking history, not to Pigeon Fancier's disease. He based his opinion on Claimant's medical records, including the diagnostic studies summarized in his IME report. He also reviewed Claimant's testimony. He explained Claimant's exposure to pigeons was brief, and removed in time from Claimant's worsened condition in 2012. This is inconsistent with the disease, which is an acute condition with immediate onset, not a delayed response. Employer's Expert refuted the significance of the IgE level because it may result from exposure to other allergens, like dog dander, pollen or dust mites. He explained symptoms from allergens would not result in any degree of chronicity. He explained there should be an elevation in eosinophils to indicate allergens, which was normal in Claimant. Also, Claimant's most recent CT scan was normal. He emphasized Claimant reported negative for the psittacosis test, which was the most frequent test for Pigeon Fancier's disease. However, Employer's Expert could not explain the disappearance of the nodules on Claimant's 2012 chest X-ray. He acknowledged nodules are not consistent with COPD.

The WCJ admitted the deposition transcripts of both medical experts, and their reports with one caveat. Employer objected to the admission of the Subsequent Report based on hearsay. After brief argument on the record, the WCJ sustained the objection, advising it would be considered only as corroborative evidence. See Notes of Testimony (N.T.), 10/22/13, at 11. However, when Claimant advised that he may re-depose Treating Physician based on the objection, Employer withdrew the objection. Id. at 15.

Ultimately, the WCJ granted Claimant's claim petition and awarded medical and indemnity benefits from May 2012, and ongoing. He credited Treating Physician's opinion over that of Employer's Expert because Treating Physician is certified in pulmonary medicine, and he had a sufficient basis for his opinions, including his several-year treatment history. The WCJ made no express determination as to the competence of Treating Physician's opinion. The WCJ did not credit the opinion of Employer's Expert because he could not explain why Claimant's CT scans improved, which would not occur with emphysema. Employer appealed to the Board, arguing the WCJ erred as a matter of law in relying on Treating Physician's opinion and not accounting for conflicting evidence.

The Board reversed the WCJ, concluding he erred as a matter of law in crediting Treating Physician when his opinion was founded on inaccurate facts. Specifically, Treating Physician's opinion was predicated on his belief that Claimant stopped smoking in 2008, so "[Claimant] didn't do his smoking," yet his symptoms worsened. Bd. Op., 2/17/16, at 6. The date Claimant quit smoking was

8

important because it prompted Treating Physician to look for alternate causes of Claimant's worsening condition. Also, the diagnostic studies were not dispositive as to causation. The Board reasoned, "[Treating Physician] based his diagnoses of work-related bird fancier's disease on a history that Claimant [1] had quit smoking in 2008[;] and[,] [2] had been exposed to pigeon droppings from 2009 to 2012." Id. at 10. Because these important assumptions were incorrect, Treating Physician's opinion was incompetent. Therefore, the WCJ's award was not supported by substantial competent evidence.

Claimant now petitions for review.

## II. Discussion

On appeal,[1] Claimant contends the Board erred in concluding Treating Physician's opinion was incompetent when it accounted for his smoking history and his exposure to the pigeon antigen in the Subsequent Report. He argues the Board disregarded the WCJ's credibility findings that considered the entirety of the evidence. That Treating Physician subsequently reinforced his causation opinion after the deposition, when he had the accurate history, removes the challenge to the competence of his opinion. Rather, the Subsequent Report goes to the weight of Treating Physician's testimony, not its competence.

---

[1] Our review is limited to determining whether an error of law was committed, whether necessary findings of fact were supported by substantial evidence, and whether constitutional rights were violated. Dep't of Transp. v. Workers' Comp. Appeal Bd. (Clippinger), 38 A.3d 1037 (Pa. Cmwlth. 2011).

9

On a claim petition, the claimant bears the burden of proving he suffers from a work-related injury. Inglis House v. Workmen's Comp. Appeal Bd. (Reedy), 634 A.2d 592 (Pa. 1993). The claimant must establish all the elements supporting an award, including the causal connection between his alleged disability and the work injury. McCabe v. Workers' Comp. Appeal Bd. (Dep't of Revenue), 806 A.2d 512 (Pa. Cmwlth. 2002).

When this causal connection is not obvious, "[u]nequivocal medical evidence is required." City of Pittsburgh v. Workers' Comp. Appeal Bd. (Wilson), 11 A.3d 1071, 1075 (Pa. Cmwlth. 2011). The competency of medical evidence is a legal conclusion reviewable on appeal. Pryor v. Workers' Comp. Appeal Bd. (Colin Serv. Sys.), 923 A.2d 1197 (Pa. Cmwlth. 2006).

By contrast, it is solely for the WCJ as fact-finder to assess credibility and resolve evidentiary conflicts. Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison), 819 A.2d 164 (Pa. Cmwlth. 2003). As such, the WCJ may reject the testimony of any witness, in whole or in part, including a medical expert. Griffiths. v. Workers' Comp. Appeal Bd. (Red Lobster), 760 A.2d 72 (Pa. Cmwlth. 2000). A single medical expert's testimony is a reasonable basis upon which a WCJ may base a finding of fact despite conflicting evidence. Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan), 572 A.2d 838 (Pa. Cmwlth. 1990), aff'd, 612 A.2d 434 (Pa. 1992).

However, "it is well settled that where an expert's opinion is based on an assumption which is contrary to the established facts of record, that opinion is

10

worthless." Williams v. Workers' Comp. Appeal Bd. (Hahnemann Univ. Hosp.), 834 A.2d 679, 684 (Pa. Cmwlth. 2003). "An opinion that is rendered where the [expert] does not have a complete grasp of the medical situation and/or the work incident can render the proffered opinion incompetent." Long v. Workers' Comp. Appeal Bd. (Integrated Health Servs.), 852 A.2d 424, 428 (Pa. Cmwlth. 2004).

Regardless, a medical expert's opinion is not rendered incompetent unless it is *solely* based on inaccurate or false information. Casne v. Workers' Comp. Appeal Bd. (Stat Couriers, Inc.), 962 A.2d 14 (Pa. Cmwlth. 2008). "[T]he opinion of a medical expert must be viewed as a *whole,* and … **inaccurate information will not defeat that opinion unless it is dependent on those inaccuracies**." Amer. Contracting Enters., Inc. v. Workers' Comp. Appeal Bd. (Hurley), 789 A.2d 391, 396 (Pa. Cmwlth. 2001) (italics in original; bold added).

There is no dispute that Treating Physician predicated his opinion at deposition on two important, yet incorrect, assumptions: (1) Claimant quit smoking in 2008, and so was not inhaling smoke between 2009 and 2012; and, (2) Claimant was exposed to significant amounts of pigeon excrement between 2009 and 2012. As to the first assumption, the established facts reflect Claimant continued smoking from 2008 until he quit in February 2012, so he was inhaling smoke when his lung condition worsened. R.R. at 78a, 93a-94a. As to the second assumption, the established facts show Claimant was exposed to pigeon excrement briefly in the summer of 2008, not from 2009 to 2012. R.R. at 100a-01a.

The Board determined these inaccuracies rendered Treating Physician's opinion incompetent as a matter of law because they were the basis for linking Claimant's condition to Pigeon Fancier's disease, and tying the exposure to Employer's work site. We agree.

Treating Physician opined as to the cause of Claimant's condition under the misapprehension that Claimant did not smoke between 2008 and 2012, and that he was exposed to the pigeon allergen during that period, when in fact, his exposure ended years before. R.R. at 227a-28a, 232a-33a. Therefore, his opinion was dependent on those inaccuracies. Indeed, Treating Physician testified both on direct and cross-examination that he looked to alternate causes for Claimant's deteriorating lung capacity because he believed, in error, that Claimant was not smoking after 2008, and he could not otherwise account for his worsening condition. R.R. at 181a, 194a-95a

Though it became apparent during Treating Physician's deposition that his opinion was predicated on a misapprehension of critical facts, Claimant's counsel did not ask him at that time to confirm his opinions after assuming the correct period of exposure. Instead, Claimant submitted the Subsequent Report months later, which did not allow for cross-examination.

Setting aside the hearsay problems with the Subsequent Report, Treating Physician did not explain how an exposure to pigeon excrement, for a short duration in 2008, caused Claimant to suffer from hypersensitivity pneumonia almost three-and-a-half years later. Importantly, Treating Physician did not account for

12

this time lapse in the Subsequent Report. That is critical when Treating Physician's opinion tying causation of Claimant's allergic pneumonia to pigeon excrement was dependent on exposure that "trigger[ed], and trigger[ed]" Claimant's response. R.R. at 260a.

Claimant argues Treating Physician's opinion is not incompetent because it was not *solely* based on inaccurate information. Claimant argues Treating Physician's opinion was based on his treating history, physical examination, and diagnostic tests that showed Claimant's response to an allergen, aspergillus fumigatus. The tests ruled out COPD and emphysema as causes for Claimant's condition in 2012, and the CT scans did not show smoking-related changes. We disagree.

The record reflects Treating Physician did not treat Claimant from 2008 through 2012; there was one examination in November 2008 before Claimant returned to Treating Physician for a second visit on May 17, 2012, the same date that Treating Physician diagnosed Claimant with Pigeon Fancier's disease. R.R. at 250a, 261a. Thus, when he diagnosed Claimant, Treating Physician had no history of treating Claimant for respiratory problems, id. at 261a; the only history he had of Claimant was the inaccurate understanding that Claimant quit smoking in 2008.

As to the diagnostic tests, Treating Physician submitted competent evidence that Claimant's condition in 2012[2] was not smoking-related. However,

_____

[2] Employer also argued to the Board that the WCJ erred in granting ongoing benefits when Treating Physician testified Claimant fully recovered in September 2012, based on the most recent CT scan showing the lungs were again clear, and the nodule gone. However, the Board did not address this issue.

13

Treating Physician also testified that <u>none</u> of the diagnostic tests showed the cause of the lung condition was pigeon excrement, or that the lung condition was definitively Pigeon Fancier's disease, as opposed to some other allergen-related ailment. R.R. at 233a. Given these lapses, the diagnostic tests do not support Treating Physician's causation opinion.

The facts Treating Physician relied on when he testified as to the dates of Claimant's exposure are wholly unsupported by the record. Claimant's testimony is clear that his exposure to the pigeon excrement was for a limited duration in 2008, and that when he returned to the worksite in October 2008, the excrement had been removed.

Understanding the accurate periods of exposure was critical to rendering a competent medical opinion. <u>Williams</u>. Treating Physician's opinion depended on materially false information. As such, that testimony was worthless. <u>Namani v. Workers' Comp. Appeal Bd. (A. Duie Pyle)</u>, 32 A.3d 850 (Pa. Cmwlth. 2011); <u>Long</u>; <u>Williams</u>.

Absent the Subsequent Report, Treating Physician's medical opinion was based on false information and an inaccurate medical history requiring its exclusion. <u>Newcomer v. Workmen's Comp. Appeal Bd. (Ward Trucking Corp.)</u>, 692 A.2d 1062 (Pa. 1997). The sole medical opinion evidence Claimant submitted containing accurate periods of exposure to the allergen was the Subsequent Report. However, as hearsay, Treating Physician's statement in the Subsequent Report

14

(that he did not change his opinions regarding causation and Claimant's diagnosis) does not constitute competent medical evidence as a matter of law.

Under the Walker rule, hearsay evidence, admitted without objection, may support a finding if it is corroborated by any competent evidence in the record, but a finding of fact based solely on hearsay will not stand. Walker v. Unemployment Comp. Bd. of Review, 367 A.2d 366 (Pa. Cmwlth. 1976). The Walker rule applies in workers' compensation proceedings. Furnari v. Workers' Comp. Appeal Bd. (Temple Inland), 90 A.3d 53 (Pa. Cmwlth. 2014).

Unobjected to hearsay evidence relating to a causal connection must be corroborated not by lay testimony, but by competent medical evidence. Calcara v. Workers' Comp. Appeal Bd. (St. Joseph Hosp.), 706 A.2d 1286 (Pa. Cmwlth. 1998). In Calcara, this Court "made clear that corroboration by the testimony of the claimant or another untrained lay witness is insufficient." Kensington Mfg. Co. v. Workers' Comp. Appeal Bd. (Walker), 780 A.2d 820, 822 (Pa. Cmwlth. 2001). Further, an employer's failure to object to hearsay evidence does not relieve a claimant of the burden to present competent corroborative medical evidence when causation is not obvious. Calcara.

Here, where causation of his condition was not obvious, Claimant needed to establish causation through competent medical testimony. City of Pittsburgh. That Employer withdrew its hearsay objection to the Subsequent Report did not render it competent or overcome its status as hearsay. Walker. Claimant did not submit any other medical evidence to show a causal connection between his

15

exposure to pigeon excrement and his decreased lung capacity. <u>Calcara</u>. Thus, Treating Physician's opinion is not corroborated by medical evidence. <u>Id.</u> As a result, there is no competent medical opinion evidence attributing Claimant's lung condition to his exposure to pigeon excrement on Employer's work site in 2008.

Because Claimant did not submit any medical opinion evidence other than Treating Physician's deposition and the Subsequent Report, one of which is incompetent because it depends upon inaccuracies, and the other of which is hearsay, he did not submit substantial competent evidence to support his claim. Accordingly, the WCJ erred in granting Claimant's claim petition.

### III. Conclusion

For the foregoing reasons, the Board's order is affirmed.

_____
ROBERT SIMPSON, Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dennis J. Klamut,
     Petitioner

    v.

Workers' Compensation Appeal
Board (Fleming Steel Company),
     Respondent

  :
  :
  :
  : No. 405 C.D. 2016
  :
  :
  :
  :

## **O R D E R**

**AND NOW**, this 20th day of December, 2016, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.


            _____
            ROBERT SIMPSON, Judge