IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, :
Executive Offices, :
                    Petitioner :
                              : No. 546 C.D. 2020
           v. :
                              : Submitted: November 6, 2020
Workers' Compensation Appeal :
Board (Rothwell), :
                    Respondent :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE J. ANDREW CROMPTON, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                    FILED: April 21, 2021


           The Commonwealth of Pennsylvania, Executive Offices (Employer),
petitions for review from the May 13, 2020 order of the Workers' Compensation
Appeal Board (Board), which affirmed the decision of a workers' compensation judge
(WCJ) to the extent that she granted the claim petition filed by Kimberly Rothwell
(Claimant) and vacated the decision insofar as the WCJ awarded Claimant counsel fees
for Employer's unreasonable contest.[1] The issues presented to this Court are whether
an expert's opinion is rendered legally incompetent when the expert opines that a
claimant's job duties either caused or aggravated a work-related injury, without

_____

[1] Claimant did not appeal the Board's decision vacating the award of counsel fees in her favor, and the only issue before the Court is whether the WCJ erred in granting Claimant's claim petition.

specifically choosing one over the other, and whether the expert possessed a sufficient foundation from which to issue a competent opinion.

## Background

The relevant factual and procedural history of this case are as follows. After Claimant informed Employer that she suffered a work-related injury, Employer issued a notice of compensation denial on September 11, 2017, indicating that the claim was denied due to insufficient evidence that the injury was causally related to Claimant's employment. On October 27, 2017, Claimant filed a claim petition, alleging that on August 31, 2017, she sustained, *inter alia*, a work-related injury in the nature of a cervical disc herniation at the C6-7 level and/or an aggravation of preexisting degenerative disc disease. The matter was assigned to a WCJ, who convened a hearing. At the hearing, Claimant's counsel indicated that Claimant was seeking wage loss benefits for a closed period, specifically from September 23, 2017, to March 6, 2018, and the parties proceeded to adduce testimonial and documentary evidence.

During the hearing, Claimant testified that she was employed by the Pennsylvania Human Relations Commission in 2004, investigating discrimination complaints, and she spent approximately 90% of her time typing on a computer. Claimant stated that in October 2007, she was involved in a work-related motor vehicle accident and developed problems with her knee, upper head, and neck; as a result, she was out of work from October 2007 to April 2008 and later returned to full duty work around October 2008. (WCJ's Findings of Fact (F.F.) No. 1a., g.)

Claimant further testified that in August or November 2016, she began to experience pain and fatigue in her hands, palms, and wrists, pain in her left arm in the

2

area between the wrist and elbow, and tension and pain on the left side of her neck and both shoulders. According to Claimant, she had worked at an ergonomically correct workstation, and Employer moved her office in November 2016, which did not have the same workstation configuration. Then, in February 2017, Employer returned Claimant to her original office station; however, the office did not have all the components of the ergonomically correct workstation that it did previously. Claimant stated that, after she moved back to her original office station, she began to experience increased pain in her fingers, palms, wrists, and left arm and, also, pain and stiffness in her neck and shoulder. Claimant said that, due to her ailments, she was unable to do all of the typing and manual tasks that she was required to do as part of her job duties. Claimant testified that sometime between March and August 2017, she requested Employer to provide her with accommodations, presented Employer with light-duty restrictions from her doctors, and eventually reported a work-related injury to Employer on August 31, 2017. Claimant testified that she stopped working on September 11, 2017, because Employer did not accommodate any of her doctors' light-duty restrictions and that she continued to experience, *inter alia*, pain and stiffness in her neck and shoulders. (F.F. No. 1b.-f.)

In the course of her testimony, Claimant added that in September 2017, she visited WorkNet at the direction of Employer and obtained a physician's order for light-duty restrictions on September 8, 2017. Claimant explained that she had also been seeing Dr. Beredjiklian for swelling in her ring fingers and he, too, recommended the light-duty restrictions that she was given at WorkNet. In addition, Dr. Beredjiklian recommended that Claimant use an adjustable keyboard tray and a wrist cushion, undergo physical therapy, and see Dr. Simon for her neck complaints. Claimant testified that she first saw Dr. Simon in September 2017 and was still under his care at

the time of the hearing. Claimant said that Dr. Simon performed an MRI of her neck region, ordered physical therapy for her neck, and prescribed Neurontin and Lidocaine patches. (F.F. No. 1g.-h.)

In support of her claim petition, Claimant submitted into evidence an office note from WorkNet dated September 11, 2017, and authored by Brian Birkmire PA-C. According to the office note, Claimant visited WorkNet and was evaluated for bilateral shoulder and neck pain with bilateral hand numbness and tingling. While being treated at WorkNet, Claimant reported that she had a previous work-related injury in 2007, after which Employer provided her with a workstation that was ergonomically correct. When Employer temporarily relocated Claimant's office in November 2016, Claimant did not have an ergonomically correct workstation, and she started to experience pain and discomfort when typing and handling paper. The physical examination notes indicated that Claimant had diffuse tenderness over the upper trapezius and paraspinals, the elbow joints, and along the mid wrist region, but displayed a full range of motion in each of these areas. The office note stated that Claimant was released to modified duty, to be seen again in a week. (F.F. No. 3.)

Claimant also submitted a report from Jeremy Simon, M.D., dated May 31, 2018. The WCJ summarized the contents of this report as follows:

> a. Dr. Simon is a physician at the Rothman Institute. Dr. Simon is board certified in physical medicine and rehabilitation.
>
> b. Dr. Simon first saw Claimant on August 18, 2017, for complaints of neck pain with radiation to the shoulders. She also reported numbness and tingling in both hands. She had previously seen a hand specialist. Physical examination findings revealed neck pain with the Spurling's test, spasm in the cervical paraspinals, and pain with rotation of the neck to the left. Dr. Simon diagnosed [Claimant with] cervical

4

disc displacement and ordered an ergonomic workstation, physical therapy, and an EMG.

c. An EMG dated August 24, 2017, showed an ulnar lesion of the elbow, which was demyelinating.

d. Dr. Simon next saw Claimant on October 23, 2017, and she reported ongoing complaints. An MRI of the cervical spine dated October 4, 2017, showed a disc protrusion at C6-7. Physical examination findings and the diagnosis were unchanged. Dr. Simon prescribed medications and physical therapy.

e. Dr. Simon next saw Claimant on December 11, 2017. Claimant continued to complain of neck, shoulder, and arm pain. The symptoms were worse with prolonged sitting and turning her head and better with rest. She was using Gabapentin and Lidocaine patches which helped. The [medical] plan was to continue with medication and therapy and [to] consider an epidural injection at the next visit.

f. Dr. Simon next saw Claimant on January 22, 2018, and she reported that therapy was helpful, but she continued to have neck and arm symptoms. Dr. Simon continued therapy and medication.

g. Dr. Simon last saw Claimant on May 11, 2018. She was back to work and having difficulty at her workstation which was aggravating her neck and arm pain. On [physical] examination, she had limited strength in her arms and limited range of motion of her neck . . . . *Dr. Simon opined that Claimant's work activities of moving at work caused or aggravated a C6-7 disc herniation.* Dr. Simon recommended that Claimant avoid prolonged sitting and a larger work space as well as an ergonomic evaluation of the workstation. These restrictions were related to her work injury. Dr. Simon opined Claimant continues to need medical treatment and restrictions for the work injury.

(F.F. No. 4) (emphasis added).

5

In rebuttal, Employer offered two reports by John Handal, M.D., dated February 13, 2018, and August 20, 2018, respectively. The WCJ summarized the contents of these reports as follows:

a. Dr. Handal is a board certified orthopedic surgeon.

b. Dr. Handal evaluated Claimant at Employer's request on February 13, 2018. Claimant related her job duties as an investigator. She described that she had pain in her left wrist and left hand and paresthesias in the small and ring fingers, with elbow pain radiating to the left wrist. She also described neck pain radiating to both shoulders. Claimant related that the symptoms began 6 to 9 months before August 31, 2017. However, on August 31, 2017, she described that while reaching to answer the phone, her computer mouse slipped off the desk and she flipped her left hand from a pronated position to a supinated position to catch the mouse. She then began having pain in her left wrist and hand and paresthesias into the small and ring fingers, elbow pain radiating into the left wrist, neck pain radiating into both shoulder in the posterior arm and into the extensor mass of the left forearm along the radial aspect into the wrist on both sides and numbness into the small and ring fingers. She summarized the treatment and testing she had received.

c. Physical examination findings revealed a normal motor examination in the upper extremities, negative Phalen's and normal reflexes. There was a negative Hoffman's sign, negative Lhermitte sign, and negative Spurling's sign, but the Spurling's maneuver reproduced neck pain. Cervical spine range of motion was full. Tinel's testing was negative and Phalen's testing produced numbness in the small and ring fingers bilaterally.

d. Dr. Handal reviewed medical records in conjunction with his examination which are listed on pages 3 and 4 of his report.

e. Dr. Handal opined that Claimant did not have findings on examination which were consistent with ulnar neuropathy or an ulnar nerve lesion. The EMG reported a very mild ulnar

6

neuropathy, but there were no physical findings on examination consistent with an ulnar neuropathy. Claimant did not need any medical treatment and could perform her regular job without restrictions.

f. Dr. Handal did not review the MRI report of the cervical spine dated October 4, 2017, and reserved comment on the neck injury.

g. Dr. Handal issued an addendum report on August 20, 2018. Dr. Handal reviewed additional records. Dr. Handal noted that the mechanism of injury which Claimant described where she flipped her hand from a pronated position to a supinated position would not cause ulnar neuritis at the elbow or a cervical spine problem. In addition, the physical examination findings revealed no evidence of cervical radiculopathy or ulnar neuritis. Claimant did not need any medical treatment and could perform her regular job without restrictions.

(F.F. No. 5.)

Given the evidence presented, the WCJ credited Claimant's testimony that she sustained a work injury which rendered her disabled from September 23, 2017, to March 6, 2018. (F.F. No. 10.) The WCJ also found that the opinions of Dr. Simon were credible and that "Claimant sustained a work injury in the nature of a C6-7 disc herniation as the result of her job duties." (F.F. No. 11.) To the extent the opinions of Dr. Simon and Dr. Handal conflicted, the WCJ accepted the former over the latter. *Id.* Based on these credibility determinations and findings, the WCJ concluded that Claimant sustained her burden of proving that she suffered a work-related injury, specifically "in the nature of a C6-7 disc herniation, which rendered her disabled from September 23, 2017, to March 6, 2018," and the WCJ granted Claimant's claim petition for this closed period. (WCJ's Conclusion of Law (COL) No. 2.)[2]

_____

[2] The WCJ also found that Employer engaged in an unreasonable contest and awarded Claimant's counsel attorney's fees. However, the Board disagreed and vacated this portion of the **(Footnote continued on next page…)**

Employer then appealed to the Board. With respect to the WCJ's decision to grant Claimant's claim petition, Employer argued that the WCJ erred in finding the testimony of Dr. Simon to be credible because Dr. Simon opined that Claimant's work activities either caused or aggravated a cervical disc herniation. In Employer's view, Dr. Simon's opinion was equivocal and, thus, incompetent evidence. In rejecting this contention, the Board noted that the WCJ had complete authority over questions of credibility, evidentiary weight, and conflicting medical evidence.[3] The Board also explained that a work-related aggravation of a preexisting condition is an injury within the meaning of the Workers' Compensation Act (Act).[4] For these reasons, the Board concluded that Dr. Simon's testimony was competent and, having been accepted as credible by the WCJ, established that Claimant sustained a compensable, work-related injury under the Act.

Before the Board, Employer also asserted that Dr. Simon's opinions were incompetent because he had no knowledge of Claimant's medical history. Additionally, Employer contended that WCJ erred in finding that Claimant's testimony was credible. Again, emphasizing the exclusive authority of the WCJ in rendering credibility determinations and deciding the weight to be accorded to the evidence, the

---

WCJ's decision. As mentioned above, Claimant did not file a petition for review challenging the Board's ruling on the attorney's fees issue. *See supra* note 1.

[3] "The law is well established that the WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight. The WCJ, therefore, is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses." *Dixon v. Workers' Compensation Appeal Board (Medrad, Inc.)*, 134 A.3d 518, 524 (Pa. Cmwlth. 2016) (internal citations omitted).

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

8

Board found no merit in Employer's assertions of error. Accordingly, the Board affirmed the WCJ's decision to grant Claimant's claim petition.

Thereafter, Employer filed a petition for review with this Court.[5]

**Discussion**

Employer first contends that the WCJ erred in concluding that Claimant met her burden of proof on the claim petition because Dr. Simon's expert opinion was legally incompetent, particularly his testimony that Claimant's work activities either "caused *or* aggravated a C6-7 disc herniation." (F.F. No. 4g) (emphasis added). Citing dictionary definitions of the word "or," Employer asserts that Dr. Simon's testimony was equivocal because the term "or," based on its plain meaning, "acts as a choice between different things" or "as an approximation [of] doubt or uncertainty." (Employer's Br. at 26.) According to Employer, "Dr. Simon utilized 'or' because he was unable to opine within a reasonable degree of medical certainty that Claimant sustained a C6-7 disc herniation as a result of her work activities instead of an aggravation of a preexisting disc herniation at C6-7." *Id.* Employer thus argues that Claimant did not submit into evidence an unequivocal medical opinion regarding the nature of her work injury and, accordingly, failed to sustain her burden of proof.

Pursuant to section 301(a) of the Act, "[e]very employer shall be liable for compensation for [] *injury* to [an] employe . . . in the course of his employment." 77 P.S. §431 (emphasis added). According to section 301(c)(1) of the Act, "[t]he term[] '*injury*' . . . shall be construed to mean an injury to an employe, regardless of his

---

[5] Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, or whether findings of fact are supported by substantial evidence. *Anderson v. Workers' Compensation Appeal Board (Penn Center for Rehab)*, 15 A.3d 944, 947 n.1 (Pa. Cmwlth. 2010).

9

previous physical condition, . . . arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated . . . by the injury." 77 P.S. §411 (emphasis added).

Ultimately, these statutory sections, for purposes of determining whether a claimant is entitled to compensation under the Act, do not differentiate between a classical "injury"—*i.e.*, one that manifests itself solely as a discrete medical condition that is dissociated from any other or underlying medical condition that a claimant may have—and an exacerbated "injury"—*i.e.*, one that comes to fruition as a medical condition because it stems from or is otherwise related or connected to a preexisting medical condition or physical impairment of a claimant. Rather, the Act and our case law treat both types of injuries as compensable injuries on equal terms and footing and any distinction between the two is superficial. This is especially true where, as here, only one employer is liable and there is no claim for apportionment against another employer. *See generally South Abington Township v. Workers' Compensation Appeal Board (Becker & ITT Specialty Risk Services)*, 831 A.2d 175, 181-82 (Pa. Cmwlth. 2003) (discussing the nature of and dissimilarities between an "aggravation" and a "recurrence" of an injury in situations where a claimant has worked for different employers (or one employer had different insurance carriers) and sustained two work-related injuries).

To be sure, "[s]ection 301(c)(1) makes it clear that, in determining whether an employee has suffered a compensable injury, his previous condition is of no consequence" and "the job-related aggravation of a disease is a category of 'injury' for compensation purposes." *Pawlosky v. Workmen's Compensation Appeal Board*, 525 A.2d 1204, 1210 (Pa. 1987). Thus, "[i]t may now be said, generally, that an employer takes an employee as he comes," and the aggravation of a preexisting

10

condition is compensable, "even if the underlying disease itself was not caused by a work-related injury." *Id.* at 1209. Indeed, "[i]t is well settled in Pennsylvania that an 'aggravation of a preexisting condition' is deemed a new injury for purposes of workers' compensation law, thus, rendering the employer's current insurance carrier responsible for all medical and wage loss benefits arising from claimant's new injury." *South Abington Township*, 831 A.2d 175, 181 (Pa. Cmwlth. 2003); *see* David B. Torrey and Andrew E. Greenberg, 8 *West's Pennsylvania Practice, Workers' Compensation Law and Practice* §4:56 (3d ed. 2008).

Further, "neither the Act nor our case law has ever attempted to allocate responsibility based upon relative contributions of separate injuries to a single disabling medical condition." *South Abington Township*, 831 A.2d at 182. Consequently, "[i]n the case of an aggravation, the [current] employer bears the entire responsibility for the claimant's recent loss of earning power despite the fact that both injuries materially contributed to his current physical condition." *Id.* Viewed in this light, it should not be surprising that this Court has declined to "delineate an ecumenical definition of injury" and has focused instead on whether the injury is related to the employment. *Workmen's Compensation Appeal Board v. Bernard S. Pincus Co.*, 357 A.2d 707, 708 (Pa. Cmwlth. 1976), *aff'd*, 88 A.2d 659 (Pa. 1978).[6]

_____

[6] Pursuant to section 301(c)(1) of the Act, "an employee's injuries are compensable if they (1) arise in the course of employment and (2) are causally related thereto." *Amandeo v. Workers' Compensation Appeal Board (Conagra Foods)*, 37 A.3d 72, 75-76 n.4 (Pa. Cmwlth. 2012). "In a claim petition for compensation, the claimant has . . . the burden of establishing a causal relationship between a work-related incident and an alleged disability." *Rife v. Workers' Compensation Appeal Board (Whitetail Ski Co.)*, 812 A.2d 750, 754 (Pa. Cmwlth. 2002). To show that an injury was related to employment, the claimant must demonstrate a causal connection between work and the injury, and unequivocal medical evidence is required where it is not obvious that an injury is causally related to the work incident. *Povanda v. Workmen's Compensation Appeal Board (Giant Eagle)*, 605 A.2d 478, 486 (Pa. Cmwlth. 1992). Stated otherwise, medical experts testifying to a causal connection between the injury and the claimant's employment "must testify, not that the injury or condition might **(Footnote continued on next page…)**

Here, in pertinent part, Dr. Simon's report provided as follows:

[O]n August 18, 2017, [Claimant's] chief complaint to me at that time was neck pain for several weeks with radiation to the shoulders. She described numbness and tingling into both hands. . . . [Claimant] noted pain that was worse with activities, turning her head, leaning her head to the side, somewhat relieved with changing positions. She also related to me that she had had neck issues from a previous work injury . . . .

[O]n October 23, 2017, [Claimant's] chief complaint at that time was pain in the neck and shoulders and numbness in the hands. Her MRI demonstrated a disc protrusion at C6-C7. She had a positive Spurling sign on the right. My impression was cervical disc displacement . . . .

It is my medical impression that [Claimant] did have a work-related injury to the neck. This occurred when she was moving at work in February [2017] and developed symptoms. The nature of it[, *i.e.*, the injury] is either [a] caused or aggravated [] C6-C7 disc herniation.

(Claimant's Ex. No. 2.)

"The question of whether expert medical testimony is unequivocal, and, thus, competent evidence to support factual determinations is a question of law subject to our review." *Amandeo v. Workers' Compensation Appeal Board (Conagra Foods)*, 37 A.3d 72, 80 (Pa. Cmwlth. 2012). "Taking a medical expert's testimony as a whole, it will be found to be equivocal if it is based only upon possibilities, is vague, and leaves doubt." *Id.* As a general rule, expressions such as "probably," "possibly," or "maybe" are equivocal in nature. *See Bemis v. Workers' Compensation Appeal Board (Perkiomen Grille Corp.)*, 35 A.3d 69, 72 (Pa. Cmwlth. 2011).

---

have or possibly came from the assigned cause, but that in his professional opinion the result in question did come from the assigned cause." *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 498 A.2d 800, 802 (Pa. 1985).

At the same time, however, "it is not the law . . . that every utterance which escapes the lips of a medical witness on a medical subject, must be certain, positive, and without reservation, exception, or peradventure of a doubt." *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas)*, 465 A.2d 132, 134-35 (Pa. Cmwlth. 1983). Instead, expert testimony will be deemed competent evidence "even if the medical witness admits to uncertainty, reservation, doubt or lack of information with respect to medical and scientific details." *Id.* at 135. Succinctly, "the requirement that medical evidence be unequivocal cannot reasonably be viewed as a demand for perfect testimony from members of the medical profession." *Children's Hospital of Philadelphia v. Workmen's Compensation Appeal Board (Washington)*, 547 A.2d 870, 872 (Pa. Cmwlth. 1988). This is "because medical science is not capable of absolute certainty in all matters and some opinions must necessarily be judgmental." *Fessler v. Workmen's Compensation Appeal Board (Nationwide Insurance Co.)*, 484 A.2d 422, 426 (Pa. Cmwlth. 1984).

Our decisions in *Manitowoc Co., Inc. v. Workers' Compensation Appeal Board (Cowan)*, 74 A.3d 1137, 1142 (Pa. Cmwlth. 2013), and *Liveringhouse v. Workers' Compensation Appeal Board (Adecco)*, 970 A.2d 508 (Pa. Cmwlth. 2009), are instructive and provide guidance on the issue presented.

In *Manitowoc Co., Inc.*, a case involving expert testimony as to the causal relationship between the work activity and the injury, this Court held that the "mere offering of alternative analyses with respect to a work-related injury does not render the expert's testimony equivocal." 74 A.3d at 1142. There, the claimant filed a fatal claim petition, alleging that his father fell from a crane platform at work and later died as a result of the injuries he sustained from the fall. The claimant's expert set forth four possible explanations regarding the connection between the father's fall and his

13

death: "(1) the fall caused mid-brain hemorrhaging and death; (2) the fall caused a massive head injury, resulting in cardiac and respiratory arrest, anoxic brain injury, and death; (3) the fall caused a blood clot in the back of [the] [f]ather's throat, impairing his ability to breath and causing anoxic brain injury and death; or (4) the fall caused closed-head trauma, mid-brain hemorrhaging, secondary anoxic brain injury, and death." *Id.* Nonetheless, "[u]nder each of these scenarios, [the expert's] ultimate conclusion was that the fall and blunt-force head trauma caused [the] [f]ather's death," and the expert opined "that absent the head trauma, [the] [f]ather would still be alive." *Id.*

Before this Court, the employer in *Manitowoc Co., Inc.* argued that the expert's testimony was equivocal and incompetent. We disagreed, and, in so doing, reasoned as follows:

> The [Board] correctly concluded that an expert's mere offering of alternative analyses with respect to a work-related injury does not render the expert's testimony equivocal. To be unequivocal, the expert need only state that in his or her professional opinion, the result in question came from the assigned cause. Expert testimony is competent even if the witness admits to uncertainty, doubt, reservation, or a lack of information with regard to certain medical details, as long as the witness does not recant the opinion first expressed. Here, despite his uncertainty about the exact chain of physiological events, [the expert] opined, at every stage of the litigation, that the fall and head trauma caused [the] [f]ather's death.

*Id.* (internal citations omitted).

In *Liveringhouse*, a WCJ dismissed a claimant's review petition seeking to add carpal tunnel syndrome as an acknowledged work injury. In that case, the claimant's doctor testified that the claimant's job duties caused her carpal tunnel; specifically, he opined that the repetitive stress activity of her job "would likely cause the carpal tunnel syndrome, *or* if she even had some preexisting condition that was not

symptomatic, would aggravate that to the extent that it would become symptomatic." *Id.* at 511-12 (emphasis added).

Although the claimant's doctor submitted testimony that was disjunctive in nature when characterizing the claimant's injury, this Court nonetheless concluded that it was competent and unequivocal. We explained:

> [The doctor's] testimony viewed as a whole unequivocally indicates that [the] [c]laimant's carpal tunnel syndrome was caused by her job duties. He testified that . . . the actual EMG numbers [were] conclusive for severe carpal tunnel on the right and moderate to severe carpal tunnel on the left. The WCJ chose to emphasize [the doctor's] opinion that [the] [c]laimant's job duties would 'likely' cause carpal tunnel, but [the doctor] also opined that even if she had some pre-existing condition that was not symptomatic her job duties would aggravate it to the extent that it would become symptomatic. A doctor's testimony should be considered as a whole, and a determination of whether it is unequivocal should not rest upon a few words taken out of context.

*Id.* at 515. In essence, our decision in *Liveringhouse* strongly suggests that an expert's opinion will not be deemed incompetent simply because an expert testifies that a claimant's work duties either caused an injury or aggravated a preexisting injury.

Applying the legal principles discussed above, we conclude that the WCJ did not err in determining that the testimony of Dr. Simon, via his report, constituted competent evidence. Here, the WCJ found that "Claimant sustained a work injury in the nature of a C6-7 disc herniation as the result of her job duties." (F.F. No. 11.) Although the WCJ credited and relied on the testimony of Dr. Simon in reaching this conclusion, and Dr. Simon stated that Claimant's C6-7 disc herniation was caused by her work duties *or* that her work duties aggravated a preexisting injury and caused a C6-7 disc herniation, the net result is the same—that is, either way, Claimant sustained

a work injury in the nature of a C6-7 disc herniation. Notably, Claimant had a history of problems with her neck: she had been involved in a work-related motor vehicle accident in October 2007 and experienced pain in her neck region from that moment onward, intermittently and increasingly, up until she reported the present work-related injury to Employer in August 2017. Given Claimant's medical history, it is understandable that Dr. Simon could not be absolutely certain, from a scientific standpoint, whether Claimant's injury was an aggravation of a preexisting injury or a distinct injury in its own right, for "some opinions must necessarily be judgmental." *Fessler*, 484 A.2d at 426.

Moreover, as explained previously, the statutory and case law establish that a work-related aggravation to a preexisting injury is compensable to the same extent and manner as a work-related injury that manifests itself discretely. While it may be presumed that an expert's testimony could be equivocal with regard to the characterization of the nature of the injury, that is not the case here. In other words, Dr. Simon did not testify that it was "possible" or "somewhat likely" that Claimant suffered a C6-7 disc herniation because her work duties caused the injury or aggravated a preexisting condition that resulted in the injury. To the contrary, the testimony of Dr. Simon, akin to the doctors' testimony in *Manitowoc Co., Inc.* and *Liveringhouse*, unequivocally, unconditionally, and unambiguously demonstrated that Claimant's injury was caused by her work duties. And, analogous to the doctors' testimony in *Manitowoc Co., Inc.* and *Liveringhouse*, Dr. Simon rendered his expert opinion based on alternative theories. However, as in *Manitowoc Co., Inc.* and *Liveringhouse*, this fact, standing alone, does not render his opinion incompetent. Therefore, we find no merit in Employer's contention.

Somewhat relatedly, Employer contends that Claimant failed to present unequivocal medical evidence establishing a causal connection between a C6-7 disc herniation and her work duties. More specifically, Employer asserts that Dr. Simon's opinion was equivocal in this regard because he vaguely stated that Claimant's injury "occurred when she was moving at work in February [2017] and developed symptoms." (Claimant's Ex. No. 2.)

However, it is well settled "that, for an injury to be compensable under the Act, it is not required that the injury have resulted from any sudden occurrence or accident; it may be due to daily trauma or to a daily aggravation of a preexisting injury." *SKF USA, Inc. v. Workers' Compensation Appeal Board (Smalls)*, 728 A.2d 385, 388 (Pa. Cmwlth. 1999). Further, for an injury to be compensable, a claimant need not prove that she sustained an injury on "specific dates, and by specific events on those dates." *Sheetz v. Workmen's Compensation Appeal Board (Firestone Tire & Rubber Co.)*, 522 A.2d 146, 152 (Pa. Cmwlth. 1987). Here, Claimant testified that

> [h]er symptoms worsened around February 2017 after the move from the temporary location to the remodeled office. She again had to pack and unpack, disassemble and move equipment, case files and personal belongings and she began to experience pain in her neck, shoulders and left forearm. When she returned to the permanent location, she no longer had an ergonomic workstation. Claimant's symptoms continued to worsen between March and August 2017. The pain in her last two fingers, palms and wrists had worsened and she began to have pain in the left side of her neck and behind the shoulder blades. She was having difficulty carrying heavier case files, completing written reports, staying on the phone to complete extended interviews and maintaining case files in which each document had to be fastened and hole-punched into the file.

(F.F. No. 1e.)

17

Notably, Claimant conveyed this information to Dr. Simon, and the WCJ found Claimant's testimony to be credible. In forming an opinion, a medical expert may rely on the personal history given to him by the claimant, so long as the claimant's testimony is competent and accepted as true by the factfinder. *Somerset Welding & Steel v. Workmen's Compensation Appeal Board (Lee)*, 650 A.2d 114, 118 (Pa. Cmwlth. 1994). Simply put, Claimant suffered an injury in February 2017, and it continued to worsen through time, up to the point where Claimant could no longer work in August 2017. Given this record, we fail to discern how Dr. Simon's testimony regarding the occurrence of Claimant's injury was legally incompetent.

Finally, Employer asserts that "Dr. Simon's opinions are also incompetent because Dr. Simon had no knowledge of Claimant's physical condition before he initially examined her on August 18, 2017, and did not review her extensive medical records before August 2017 documenting many years of complaints to her cervical spine and many years of medical treatment to said body part." (Employer's Br. at 29.) Employer further argues that Claimant did not provide Dr. Simon with a complete medical history and had separate accounts of when and to what extent she injured her neck in 2017 while working for Employer. In addition, Employer baldly contends that Dr. Simon had no reasonable basis to render an opinion.

Pursuant to Pennsylvania law, an expert opinion is not competent to establish causation when "it is based upon a series of assumptions that lack a factual predicate." *City of Philadelphia v. Workers' Compensation Appeal Board (Kriebel)*, 29 A.3d 762, 770 (Pa. 2011). Somewhat similarly, where "an expert's opinion is dependent upon information that is inaccurate or lacks support in the record, it is deemed incompetent." *Id.* at 770 (internal citation and parenthetical omitted). At the same time, this Court has held that, when considering the evidentiary basis for an

expert's opinion, a medical opinion is rendered incompetent only if it is based solely on inaccurate or false information. *Degraw v. Workers' Compensation Appeal Board (Redner's Warehouse Markets, Inc.)*, 926 A.2d 997, 1001 (Pa. Cmwlth. 2007); *American Contracting Enterprises, Inc. v. Workers' Compensation Appeal Board (Hurley)*, 789 A.2d 391, 396 (Pa. Cmwlth. 2001).

Here, Employer does not cite to any information upon which Dr. Simon relied to formulate his expert opinion that was either false, inaccurate, or unsupported by the evidence of record. Notably, in a series of decisions, this Court has concluded that the fact that an expert does not have all of the claimant's medical records, or fails to review them or the claimant's job descriptions, or does not know all of the details of the mechanics of the claimant's injury, are matters that go to the weight to be given to the expert's testimony, not its competency. *See, e.g.*, *Degraw*, 926 A.2d at 1001; *Samson Paper Co. & Fidelity Engraving v. Workers' Compensation Appeal Board (Digiannantonio)*, 834 A.2d 1221, 1224 (Pa. Cmwlth. 2003); *American Contracting Enterprises*, 789 A.2d at 396. Similarly, allegations that an expert did not conduct enough physical examinations of a claimant or failed to order additional diagnostic testing are matters that pertain to the weight of the evidence, and not its competency. *Berger v. Workers' Compensation Appeal Board (Lehigh University)* (Pa. Cmwlth., No. 907 C.D. 2014, filed January 18, 2015) (unreported), slip op. at 13 n.4;[7] *Coyne v. Workers' Compensation Appeal Board (Villanova University)*, 942 A.2d 939, 955 (Pa. Cmwlth. 2008); *Workmen's Compensation Appeal Board (Bethlehem Steel) v. Czepurnyj*, 340 A.2d 915, 919 (Pa. Cmwlth. 1975). Consequently, Employer's arguments are refuted by the case law and are devoid of merit.

---

[7] We cite *Berger*, an unreported decision, for its persuasive value in accordance with section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

19

Therefore, having concluded that Employer has failed to present this Court with a meritorious argument establishing that the tribunals below committed error in their decisions, we affirm the Board's order affirming the WCJ's grant of Claimant's claim petition.

_____

PATRICIA A. McCULLOUGH, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania, | : | |
| Executive Offices, | : | |
|           Petitioner | : | |
| | : | No. 546 C.D. 2020 |
|           v. | : | |
| | : | |
| Workers' Compensation Appeal | : | |
| Board (Rothwell), | : | |
|           Respondent | : | |

## ***ORDER***

AND NOW, this 21st day of April, 2021, the May 13, 2020 order of the Workers' Compensation Appeal Board is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge